1   Michael G. Marderosian, No. 077296
    Heather S. Cohen, No. 263093
2   MARDEROSIAN & COHEN
    1260 Fulton Mall
3   Fresno, CA 93721
    Telephone: (559) 441-7991
4   Facsimile: (559) 441-8170

5   Virginia Gennaro, No. 138877
    City Attorney
6   CITY OF BAKERSFIELD
    1501 Truxtun Avenue
7   Bakersfield, CA 93301
    Telephone: (661) 326-3721
8   Facsimile: (661) 852-2020

9   Attorneys for: Defendants CITY OF BAKERSFIELD and OFFICER AARON STRINGER

10              UNITED STATES DISTRICT COURT

11          EASTERN DISTRICT / FRESNO DIVISION

12

13  LESLIE LARAY CRAWFORD,                ) Case No. 1:14-CV-01735-SAB
    individually and as Sucessor in Interest )
14  to MICHAEL LARAY DOZER,               ) **DEFENDANTS' MOTIONS IN**
    deceased,                             ) **LIMINE; DECLARATION OF**
15                                        ) **MICHAEL G. MARDEROSIAN**
                    Plaintiff,            ) **IN SUPPORT**
16                                        )
          v.                              ) **DATE: October 6, 2016**
17                                        ) **TIME: 3 p.m.**
    CITY OF BAKERSFIELD, a municipal      ) **DEPT: #9**
18  entity, OFFICER AARON STRINGER,       )
    an individual, MICHAEL EUGENE DOZER   )
19  (as a nominal defendant) and DOES 1   )
    through 10, inclusive,                ) *Trial Date: October 18, 2016*
20                                        )
                    Defendants.           )
21  _____ )

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

**Page**

Table of Authorities............................................................. iii

REQUESTED ORDER............................................................. 1

CERTIFICATION OF MEET AND CONFER......................................... 1

STANDARD OF REVIEW.......................................................... 1

GENERAL STANDARDS RELATING TO THE INADMISSIBILITY
OF IRRELEVANT MATTERS OR MATTERS WHICH ARE MORE
PREJUDICIAL THAN PROBATIVE................................................ 2

STATEMENT OF FACTS......................................................... 2

MOTION IN LIMINE NO. 1: TO EXCLUDE ANY REFERENCE
TO THE INCIDENT INVOLVING RAMIRO VILLEGAS ............................. 5

      A.    Evidence of Discipline Regarding An Unrelated
            Incident Is Impermissible Character Evidence............................ 5

      B.    The Evidence Of The Incident and Subsequent
            Discipline Is Inadmissible Under Federal Rules
            of Evidence 402 and 403................................................ 6

MOTION IN LIMINE NO. 2: TO EXCLUDE ANY REFERENCE
TO THE FACT THAT MR. STRINGER WAS TERMINATED
BY THE BAKERSFIELD POLICE DEPARTMENT..................................... 7

MOTION IN LIMINE NO. 3: TO EXCLUDE ANY REFERENCE
THAT THE CITY OF BAKERSFIELD IS DEFENDING
AND/OR INDEMNIFYING DEFENDANT STRINGER................................. 8

MOTION IN LIMINE NO. 4: TO EXCLUDE INTRODUCTION
OF ANY PRE-DEATH PHOTOGRAPHS OR VIDEOS OF
DECEDENT OTHER THAN THE VIDEO TAKEN AT THE
GAS STATION IMMEDIATELY PRECEDING THE INCIDENT........................ 9

      A.    Evidence Code §401- Relevance........................................ 9

      B.    Evidence Code §403 - Undue Prejudice................................. 9

MOTION IN LIMINE NO. 5: TO EXCLUDE POST-DEATH
GRAPHIC PHOTOGRAPHS OF MR. DOZER...................................... 10

MOTION IN LIMINE NO. 6: TO REQUIRE REFERENCE TO
MR. DOZER BY NAME AND MR. STRINGER BY NAME
RATHER THAN "VICTIM", "KILLER", OR "SHOOTER"
OR SUCH OTHER INFLAMMATORY TERMS...................................... 11

MOTION IN LIMINE NO. 7: TO EXCLUDE INFLAMMATORY
TERMS SUCH AS "MURDER", "HOMICIDE" AND "KILLED"...................... 11

MOTION IN LIMINE NO. 8: TO EXCLUDE ANY REFERENCE
TO WRONGDOING BY DAMACIO DIAZ AND/OR PATRICK MARA.................. 11

RESERVATION OF RIGHTS. ................................................... 12

DECLARATION OF MICHAEL G. MARDEROSIAN................................ 13

CASES

*Achille Bayart & Cie v. Crowe*, 238 F.3d 44 (1ˢᵗ Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Armenta v. Churchill*, 42 Cal.2d 448 (1954). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Beckway v. Deshong*, 2012 U.S. Dist. Lexis 3972 (N.D. CA 2012). . . . . . . . . . . . . . . . . . . . . 6, 8

*Blind-Doan v. Sanders*, 291 F.3d 1079 (9ᵗʰ Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Castro v. Cnty. of L.A.*,
2015 U.S. Dist. LEXIS 103945 (C.D. CA Aug. 3, 2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Chrysler v. City of W. Covina*,
1998 U.S. App. LEXIS 30993 (9th Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Destacamento Gonzalez v. City of Garden Grove*,
2006 U.S. Dist. Lexis 97148 (C.D. CA Dec. 5, 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Estate of Zahn v. City of Kent*,
2016 U.S. Dist. Lexis 17941 (W.D. WA Feb. 11, 2016). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 11

*Fernandez v. Leonard*, 963 F.2d 459 (1ˢᵗ Cir. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Gates v. Rivera*, 993 F.2d 697 (9th Cir.1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Hamling v. United States*, 418 U.S. 87 (1974). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Jetton by & Through McKinley v. City of Downey*,
1996 U.S. App. LEXIS 12251 (9th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Larez v. Holcomb*, 16 F. 3d 1513 (9ᵗʰ Cir. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Lopez v. Aitken*, 2011 U.S. Dist. LEXIS 16396 (S.D. CA Feb. 18, 2011). . . . . . . . . . . . . . . . . . 12

*Luce v. United States*, 469 US 38 (1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*McEwen v. City of Norman, Okla.*, 926 F.2d 1539 (10ᵗʰ Cir 1991). . . . . . . . . . . . . . . . . . . . . . 1

*O'Meara v. Haiden*, 204 Cal. 354 (1928). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Ohler v. United States,* 529 U.S. 753 (2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Old Chief v. United States,* 519 U.S. 172 (1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Padillas v. Stork-Gamco*, Inc. 186, F.3d. 412 (3ʳᵈ Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . 1

*People v. Ramos*, 30 Cal.3d 553 (1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*People v. Redston*, 139 Cal.App.2d 485 (1956). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Phillips v. Palubicki*, 91 F.3d 154 (9th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

MARDEROSIAN & COHEN
1260 FULTON MALL
FRESNO, CA 93721

*Tan v. City & County of San Francisco,*
2010 WL 726985 (N.D. CA 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*United States v. Cook*, 608 F.2d. 1175 (9th Cir. 1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*United States v. Hankey,* 203 F.3d 1160 (9th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*United States v. Holmquist,* 36 F.3d 154 (1st Cir. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*United States v. Howell,* 285 F.3d 1263 (10th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*United States v. Kearney*, 560 F.2d 1358 (9th Cir 1977). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*United States v. Lawes,* 292 F.3d 123 (2d Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*United States v. Smith*, 196 F.3d 1034 (9th Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*United States v. Spencer,* 1 F.3d 742 (9th Cir. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Westberg v. Willde,* 14 Cal.2d 360 (1939). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Wilson v. Jara*, 2011 U.S. Dist. Lexis. 147752 (D. NM Nov. 1, 2011). . . . . . . . . . . . . . . . . . . . 8

STATUTES

42 United States Code Section 1983. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Federal Rule of Evidence Section 401. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

Federal Rule of Evidence Section 402. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 6, 7, 8

Federal Rule of Evidence Section 403. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

Federal Rule of Evidence Section 404. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6, 8

Federal Rule of Evidence Section 411. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

COMES NOW, Defendants CITY OF BAKERSFIELD and OFFICER AARON STRINGER and submit the following Motions in Limine:

## REQUESTED ORDER

In regard to the motions in limine set forth herein, Defendants specifically request this Court issue appropriate orders excluding any and all evidence, references to evidence, testimony or argument relating to the evidence discussed in each motion. Plaintiff's counsel and witnesses must be specifically instructed:

     a.     Not to mention, refer to, or attempt to convey to the jury in any manner, either directly or indirectly, any of the facts mentioned in each motion granted;

     b.     Not make any reference that the specific motion at issue has been filed; and

     c.     Warn and caution each witness to strictly follow said instructions.

## CERTIFICATION OF MEET AND CONFER

Pursuant to this Court's Pretrial Order, the parties have met and conferred regarding motions in limine. Defendants' counsel identified each and every motion in limine they intended to file. Plaintiff's counsel was unwilling to stipulate to the motions set forth herein.

## STANDARD OF REVIEW

A motion in limine is "any motion whether made before or during trial, to exclude anticipated prejudicial evidence before the evidence is actually offered. *Luce v. United States*, 469 US 38, 40 (1984). The purpose of a motion is to avoid the obviously futile attempt to 'unring the bell' when highly prejudicial evidence is offered and then stricken at trial. *McEwen v. City of Norman, Okla.*, 926 F.2d 1539, 1548 (10th Cir 1991).

Although there is no express authority in either the Federal Rules of Civil Procedure or the Federal Rules of Evidence, motions in limine are well recognized in practice and by case law. *Ohler v. United States,* 529 U.S. 753, 758 fn. 3 (2000); *Padillas v. Stork-Gamco*, Inc. 186, F.3d. 412, 417 (3rd Cir. 1999); *United States v. Cook*, 608 F.2d. 1175, 1186 (9th Cir. 1979). Authority for these motions also may be implied for "the courts inherent power to manage the course of trials." *Luce v. United States,* 469 US 38, 41 (1984); *United States v. Holmquist,* 36 F.3d 154, 163 (1st Cir. 1994).

///

**GENERAL STANDARDS RELATING TO THE INADMISSIBILITY
OF IRRELEVANT MATTERS OR MATTERS WHICH ARE
MORE PREJUDICIAL THAN PROBATIVE**

The court has inherent power to grant a motion in limine to exclude any kind of evidence that could be objected to at trial, either as irrelevant or subject to discretionary exclusion as unduly prejudicial. *Achille Bayart & Cie v. Crowe*, 238 F.3d 44, 48 (1st Cir. 2001).

Under Fed. R. of Evid. § 402, "all relevant evidence is admissible,… with certain exceptions". Relevant evidence is defined by Fed. R. Evid. § 401 which states, "Relevance means evidence having any tendency to make the existence of a fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

Fed. R. Evid. § 403 requires the trial judge to exclude relevant evidence if: (1) its probative value is substantially outweighed by the danger of unfair prejudice, *Old Chief v. United States*, 519 U.S. 172, 181 (1997); (2) confusion of the issues, or misleading the jury; (3) by consideration of undue delay, waste of time, *United States v. Lawes*, 292 F.3d 123, 131-132 (2d Cir. 2002); *United States v. Smith*, 196 F.3d 1034, 1037-1038 (9th Cir. 1999); or (4) needless presentation of cumulative evidence. *United States v. Howell*, 285 F.3d 1263, 1266 (10th Cir. 2002); *Blind-Doan v. Sanders*, 291 F.3d 1079, 1083 (9th Cir. 2002.). Unfair prejudice means an "undue tendency to suggest decision on a improper basis, commonly, though not necessarily on an emotional one." Fed. R. Evid. 403 Advisory Committee's Note (1972); *United States v. Hankey*, 203 F.3d 1160, 1172-1173 (9th Cir. 2000).

It is well recognized that trial judges have broad discretion to determine whether an item of evidence is relevant. They are accorded wide latitude in weighing the many unique and incalculable factors that figure into the decision. *Hamling v. United States*, 418 U.S. 87, 124-125 (1974); *United States v. Kearney*, 560 F.2d 1358, 1369 (9th Cir 1977).

**STATEMENT OF FACTS**

On August 6, 2014, Elsa Torres drove to the TMP gas station located at 2140 E. Brundage Lane in Bakersfield, California in her 2003 Honda Accord. At the time, Ms. Torres was with her two minor children, Hilario and Manuel, her minor brother, Oscar, her minor nephew, Alonso, and her mother.

///

MARDEROSIAN & COHEN
1260 Fulton Mall
Fresno, CA 93721

Ms. Torres pulled into the station and parked next to a gas pump so she could get some gas. Ms. Torres got out of the car and inserted the pump into her vehicle gasoline filler tube, using the lever within the pumping apparatus to lock the pump into an activated position. As Ms. Torres was pumping gas, the four minor children were in the backseat of the car and her mother was in the front passenger seat.

During this time, an African American man, later identified as Michael Dozer, approached Ms. Torres and her family and took the gas pump from Ms. Torres' vehicle, causing gas to get onto Ms. Torres, the ground, and on himself. Mr. Dozer proceeded to use a lighter to start a fire. Ms. Torres believed Mr. Dozer was trying to blow them up, killing everyone at the gas station. Angel Mora, who witnessed Mr. Dozer's conduct, was also worried the whole gas station could blow up. Ms. Torres ran to her vehicle and pulled away from the pump.

Witnesses to this incident, including Angel Mora, called the police.

Officer Stringer, who was by himself, arrived at the gas station. Officer Stringer had just finished assisting another officer with a felony warrant suspect when he saw a call pop up on his mobile data computer[1] regarding this incident. The initial caller indicated that a black male subject threw gasoline on a female with a car load of kids. As Officer Stringer was driving, he was advised by dispatch that the victim had been lit on fire, she put it out and then fled.

As Officer Stringer arrived, he made contact with witnesses including Mr. Mora and Ms. Torres. Officer Stringer was advised by Mr. Mora that there was a man that had tried to light the lady (Ms. Torres) on fire and that she had her kids with her. Ms. Torres was extremely upset and crying hysterically and she advised him that a man, later identified as Michael Dozer, had put gas on her.

As Officer Stringer was talking to Ms. Torres, she and another witness who had seen what had occurred pointed to Mr. Dozer, identifying him as the man who was responsible for this. Officer Stringer observed Mr. Dozer pacing back and forth. Officer Stringer began approaching the area where Mr. Dozer was with the intention of speaking to him; however, as soon as Mr. Dozer saw Officer Stringer, Mr. Dozer began to say something.

---

[1]A mobile data computer ("MDC") is a computer in a police vehicle which is used to dispatch calls and provide officers with information.

1    Officer Stringer continued to move forward and as he got closer to Mr. Dozer, he could hear

2    Mr. Dozer challenging him, saying things like "you want to go, let's do this." Officer Stringer felt that

3    Mr. Dozer was very angry and agitated. Witnesses who observed Mr. Dozer also believed he was

4    angry and was acting in an aggressive manner. Officer Stringer told Mr. Dozer "we don't need to do

5    this. I just want to talk to you."

6    Based on Mr. Dozer's conduct, Officer Stringer believed Mr. Dozer was under the influence

7    of a drug like PCP, which makes people very agitated and angry. Officer Stringer did not think that

8    Mr. Dozer was suffering from any form of mental illness based on the aggression that Mr. Dozer was

9    exhibiting and based on Officer Stringer's past experience.

10    Mr. Dozer then picked up a horse shoe shaped bicycle lock off the table and proceeded to

11    move quickly toward Officer Stringer. Mr. Dozer was holding the bend of the U at the base so that the

12    large, heavier part of the lock was outward. Initially, Officer Stringer did not draw his weapon.

13    Officer Stringer put his hand up and said "Stop right there. Put it down". Witnesses also heard Officer

14    Stringer loudly, clearly, and firmly tell Mr. Dozer to get on ground multiple times. However, Mr.

15    Dozer just kept coming toward Officer Stringer. Officer Stringer's commands were clearly audible,

16    but Mr. Dozer was not listening or dissuaded.

17    When Officer Stringer realized Mr. Dozer was not going to stop, Officer Stringer drew his

18    firearm, at which point Mr. Dozer continued moving rapidly toward Officer Stringer with the bike lock

19    raised over his head in a striking position. Officer Stringer backed away but Mr. Dozer continued

20    toward Officer Stringer. Officer Stringer believed Mr. Dozer was attempting to hit him with the bike

21    lock. Witnesses confirmed that Mr. Dozer was trying to attack Officer Stringer.

22    When Mr. Dozer got very close to Officer Stringer, Officer Stringer fired his weapon one time.

23    Officer Stringer did not feel that he could use the taser because Mr. Dozer was approaching him

24    quickly and aggressively and tasers are not full proof. Officer Stringer has seen people get tasered and

25    have zero reaction, especially people who are on narcotics. Furthermore, Officer Stringer did not

26    believe he had sufficient time to access and fire the taser before being struck by Mr. Dozer. This

27    entire incident transpired very quickly.

28    ///

Witnesses to the incident testified that they felt Officer Stringer was justified in defending himself from Mr. Dozer and that if he hadn't, Mr. Dozer would have struck him in the face with the bicycle lock.

Officer Stringer had never met Mr. Dozer prior to this incident and did not have any information about him before this incident.

## MOTIONS IN LIMINE

### MOTION IN LIMINE NO. 1: TO EXCLUDE ANY REFERENCE TO THE INCIDENT INVOLVING RAMIRO VILLEGAS

By and through this motion, Defendants seek any order precluding the introduction of any evidence and/or argument pertaining to the incident involving Defendant Aaron Stringer and Ramiro Villegas.

By way of brief background, on November 13, 2014, **which was approximately four months after this incident**, Ramiro Villegas was shot by four different Bakersfield Police Officers following a pursuit and confrontation. Defendant Crawford was **not** one of the officers who was involved in the shooting. Mr. Villegas was transported to Kern Medical Center where he was pronounced dead. Mr. Villegas's body was moved into the "Serenity Room" where it would remain until it was taken for an autopsy.

During this time, Defendant Stringer went to KMC with a trainee and went into the Serenity room. The sheet was removed from Mr. Villegas and Defendant Stringer proceeded to touch the body, including the feet and head, in an inappropriate and unprofessional manner. Defendant Stringer made comments while he was touching the body. This incident led to Mr. Stringer's termination from the Bakersfield Police Department.

### A. Evidence of Discipline Regarding An Unrelated Incident Is Impermissible Character Evidence

Federal Rule of Evidence 404(b) prohibits admission of evidence of other acts to prove the character of a person in order to show action in conformity therewith. *See also Gates v. Rivera,* 993 F.2d 697, 700 (9th Cir.1993) ("Character evidence is normally not admissible in a civil rights case."). ///

Any effort by Plaintiff to rely on alleged prior or subsequent conduct of any officer toward other persons to prove that he must have acted similarly in this case runs afoul of Rule 404(b). Other acts, such as complaints or lawsuits against the officers, as well as any documents containing this information, are inadmissible. *Phillips v. Palubicki*, 91 F.3d 154 (9th Cir. 1996) (holding that excluding evidence of any past complaint, lawsuit, or investigation was not an abuse of discretion because an officer's past conduct had no bearing on an excessive force inquiry.) See also *Tan v. City & County of San Francisco,* 2010 WL 726985, at *2–3 (N.D. CA 2010)(excluding evidence and argument related to complaints, investigations, or allegations of misconduct against the defendant officers, except if used solely for purposes of impeachment). See also *Beckway v. Deshong*, 2012 U.S. Dist. Lexis 3972, at *10 (N.D. CA 2012)(Court granting motion in limine excluding any evidence of discipline as it is barred under Fed. R. Evid. 404 and lacked clear relevance).

Therefore, Mr. Stringer's termination from the Bakersfield Police Department should be excluded as it involves the jury to speculate and would invite the conclusion Mr. Stringer engages in wrongdoing despite the fact that his termination had nothing to do with this incident.

Plaintiff seeks to use the Villegas incident, which occurred months after this incident, to demonstrate that the Defendant is a bad person or has a bad character. However, such argument is impermissible character evidence and must not be allowed.

**B.    The Evidence Of The Incident and Subsequent Discipline Is Inadmissible Under Federal Rules of Evidence 402 and 403**

Evidence of Defendant Stringer's misconduct arising from an incident that occurred **after** the incident giving rise to this litigation is not relevant to any issue in this case under Fed. Rule Evid. 403.

Evidentiary rule 403 permits the Court to exclude otherwise relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time. As the D.C. Circuit has held, "[p]ermitting the jury to consider the complaints and accounts of misconduct contained in the personnel files of [the defendant officers] present[s] a grave danger of unfair prejudice." *Carter*, 795 F.2d at 131. The unfair prejudice, the court explained, resulted from the likelihood that the jury ///

1  "would conclude that the evidence established the bad character of the defendants and that the

2  defendants were likely to have acted in the same way on the night in question." *Id.*

3      That reasoning applies with equal force to the present case. Any evidence regarding the

4  Villegas incident will confuse the jury and expand the length of the trial. The Villegas incident giving

5  rise to the discipline would require a "trial within a trial" and would unfairly prejudice the defendant

6  in the eyes of the jury.  It would lead to a conclusion that if there was wrongdoing on a subsequent

7  incident, there was wrongdoing in this incident.  This would consume an inordinate amount of time

8  and resources, and shift the jury's focus away from what actually occurred in this incident. The trial

9  would degenerate into a broad-ranging inquiry whether the officers are good people or bad people. The

10 jury's verdict would have more to do with the other evidence and less to do with this incident.

11      As such, this evidence must be excluded under Fed. R. Evid 403.

12      There is absolutely no relevance to evidence or argument pertaining to this issue as it happened

13 well after the incident that gives rise to this litigation, had absolutely nothing to do with Defendant

14 Stringer' use of force in this case, and cannot be used to show propensity. It is improper character

15 evidence.  Furthermore, the prejudicial impact of such evidence is overwhelming compared to any

16 probative value.  There is a high likelihood a jury would consider this type of evidence and seek to

17 punish the Defendants in this case despite the fact that there is absolutely no relation between what

18 occurred in this case and what occurred with Mr. Villegas.

19      This evidence must be excluded in its entirety.

20 **MOTION IN LIMINE NO. 2:  TO EXCLUDE ANY REFERENCE TO THE FACT THAT MR.
   STRINGER WAS TERMINATED BY THE BAKERSFIELD POLICE DEPARTMENT**

21

22      As a result of the incident described in Motion in Limine No. 1 involving Mr. Villegas,

23 Defendant Aaron Stringer was terminated by the Bakersfield Police Department. As indicated above,

24 the incident occurred several months *after* the incident giving rise to this litigation and was completely

25 and totally unrelated. As such, there is absolutely no relevance to the admission of any such evidence

26 and any probative value is minuscule and far outweighed by the prejudicial effect of such evidence.

27      Mr. Stringer's subsequent conduct that lead to his termination has absolutely no bearing on

28 any issue in this case. Fed. R. Evid. 401, 402.  Even if there was some probative value, which

Defendants vehemently dispute, that value is **greatly outweighed** by the danger of unfair prejudice, confusion of the issues, misleading the jury, and waste of time. Fed. R. Evid. 403. Finally, the evidence constitutes inadmissible character evidence. Fed. R. Evid. 404; See also *Beckway v. Deshong*, 2012 U.S. Dist. Lexis 3972, at *10 (N.D. CA 2012)(Court granting motion in limine excluding any evidence of discipline as it is barred under Fed. R. Evid. 404 and lacked clear relevance); *Wilson v. Jara*, 2011 U.S. Dist. Lexis. 147752, at * 20-21 (D.N. NM Nov. 1, 2011).

**MOTION IN LIMINE NO. 3: TO EXCLUDE ANY REFERENCE THAT THE CITY OF BAKERSFIELD IS DEFENDING AND/OR INDEMNIFYING DEFENDANT STRINGER**

The City of Bakersfield is defending and indemnifying Defendant Stringer for any non-punitive damages awarded. This fact is not relevant and should be excluded under Fed. R. Evid. 401, 402, and 411. "It has long been the rule in our courts that evidence of insurance or other indemnification is not admissible on the issue of damages. See *Larez v. Holcomb*, 16 F. 3d 1513, 1518 (9th Cir. 1994); See also Fed. R. Evid. 411 ("Evidence that a person was or was not insured against liability is not admissible to prove whether the person acted negligently or otherwise wrongfully."). The Ninth Circuit has expressly held that this rule applies to evidence regarding the indemnification of a police officer in a § 1983 action. *Larez*, 16 F.3d at 1518 ("We see no reason to depart from this rule in the context of a § 1983 action." See also *Estate of Zahn v. City of Kent*, 2016 U.S. Dist. Lexis 17941, at * 7 (W.D. WA Feb. 11, 2016)[finding that such evidence is irrelevant to the issues before the jury and any probative value is substantially outweighed by the danger of confusing the issues or misleading the jury].

If the jury is told that the City of Bakersfield is defending and indemnifying Mr. Stringer, there is a danger that this irrelevant information could affect the verdict and would be confusing and unfairly prejudicial to Defendants. Such evidence is completely irrelevant and presents a high risk of confusing the issues and misleading the jury. As such, there should be no reference to the fact that the City is defending and indemnifying Defendant Stringer.

///

///

///

**MOTION IN LIMINE NO. 4:  TO EXCLUDE INTRODUCTION OF ANY PRE-DEATH PHOTOGRAPHS OR VIDEOS OF DECEDENT OTHER THAN THE VIDEO TAKEN AT THE GAS STATION IMMEDIATELY PRECEDING THE INCIDENT**

During the course of this litigation, the Plaintiff has produced a slide show and a number of other photographs depicting Mr. Dozer as a young boy going into his early teens. Copies of the slide show and photographs are attached to the below Declaration of Michael G. Marderosian ("MGM Decl.") as Exhibit A.  At the time of this incident, Mr. Dozer was 26 years old.  The vast majority of photographs produced do not appear to depict Mr. Dozer within a decade of this incident.  It is abundantly clear that these photographs, which do not even come close to depicting Mr. Dozer around the time of his death and simply depict a sympathetic young boy are nothing more than an effort to elicit sympathy from a jury.  They are completely irrelevant and highly prejudicial, particularly because they do not even depict the decedent during a time that is in close proximity to the incident in question. As such, Defendants request an order excluding the introduction of "pre-death" photographs or videos during the time of trial.

**A.    Evidence Code §401- Relevance**

There can be no relevance derived from the introduction of pre-death photographs of decedent. The issues to be tried in this case involve liability of the individual officer, whether Defendant Stringer's  conduct violated the Fourth Amendment and whether the Defendants are liable for the death of Michael Dozer.  Pre-death photographs are not probative on any of the issues enunciated above insofar as the above issues require proof on police practices and procedures, use of force, medical causation, and *future* loss of love, companionship, society, etc.

Based on the foregoing, Defendants respectfully request an order from the court excluding any and all references and evidence of pre-death photographs of decedent based upon their lack of relevance.

**B.    Evidence Code §403 - Undue Prejudice**

There is no prejudicial error in refusing to allow introduction of pre-death photographs of a decedent in a wrongful death action.  <u>See</u> *Armenta v. Churchill*, 42 Cal.2d 448, 459 (1954).  Where the sole purpose of the introduction of a pre-death photograph of a decedent is to arouse the passions of the jury, it is reversible error to permit introduction of such photographs in evidence. *People v.*

1   *Redston*, 139 Cal.App.2d 485, 491 (1956); *People v. Ramos*, 30 Cal.3d 553, 578 (1982), overruled on

2   other grounds, citing *O'Meara v. Haiden*, 204 Cal. 354, 366 (1928). <u>See also</u> *Westberg v. Willde,* 14

3   Cal.2d 360, 371 (1939), where the court questioned the introduction of a pre-death photograph and

4   stating that it "constituted error."

5          The sole purpose of the introduction of the disclosed photographs will be to arouse the

6   passions of the jury, elicit sympathy, and otherwise inflame the jury against Defendants. There is no

7   probative value that can be derive from the introduction of these photographs, particularly because the

8   photos were not even in close proximity to the incident in question. The probative value of any pre-

9   death photographs of decedent is substantially outweighed by their prejudicial effect.

10         Based on the foregoing, Defendants respectfully request an order from the court excluding any

11  and all references and evidence of pre-death photographs of decedent.

12  **MOTION IN LIMINE NO. 5: TO EXCLUDE POST-DEATH GRAPHIC PHOTOGRAPHS
    OF MR. DOZER**

13

14         It is anticipated that Plaintiff will seek to introduce photographs of Decedent after his being

15  shot including photographs taken at the scene, at the hospital and/or during his autopsy.

16         Relevant evidence "may be excluded if its probative value is substantially outweighed by the

17  danger of unfair prejudice." Fed. R. Evid. 403. "We give the district courts 'wide latitude' when they

18  balance the prejudicial effect of proffered evidence against its probative value." *United States v.*

19  *Spencer*, 1 F.3d 742, 744 (9th Cir. 1992) (as amended).

20         Courts routinely exclude graphic photographs as being more prejudicial than probative. <u>See</u>

21  e.g. *Chrysler v. City of W. Covina*, 1998 U.S. App. LEXIS 30993, at *6 (9th Cir. 1998); *Jetton by &*

22  *Through McKinley v. City of Downey*, 1996 U.S. App. LEXIS 12251, at *5 (9th Cir. 1996);

23  *Destacamento Gonzalez v. City of Garden Grove,* 2006 U.S. Dist. Lexis 97148 (C.D. 2006);

24  *Fernandez v. Leonard*, 963 F.2d 459, 464 (1st Cir. 1992).

25         The photographs in this case would be introduced for no other purpose than to incense the jury.

26  These photographs are prejudicial under Fed. R. Evid 403 and should not be admitted into evidence.

27  ///

28  ///

**MOTION IN LIMINE NO. 6: TO REQUIRE REFERENCE TO MR. DOZER BY NAME AND MR. STRINGER BY NAME RATHER THAN "VICTIM", "KILLER", OR "SHOOTER" OR SUCH OTHER INFLAMMATORY TERMS**

Like all persons addressed or referred to in court, Defendant Stringer and Mr. Dozer should be referred to by name. Terms like "shooter", and "killer" improperly imply unlawful use of force. The label "victim" reflects Plaintiff's opinion regarding an issue that is within the province of the jury. These terms are designed to incense a jury and to evoke sympathy for Plaintiff and antipathy toward Defendant Stringer. These terms are misleading and inflammatory and should be excluded under Fed. R. Evid. 403. See *Estate of Zahn v. City of Kent*, 2016 U.S. Dist. Lexis 17941, at * 14-15 (W.D WA Feb. 11, 2016)["The labels "shooter" and "victim" are unnecessarily argumentative" and Plaintiff could easily refer to the decedent and officer by their proper names].

**MOTION IN LIMINE NO. 7: TO EXCLUDE INFLAMMATORY TERMS SUCH AS "MURDER", "HOMICIDE" AND "KILLED"**

Like the terms "shooter", "killer", and "victim", the terms "murder", "homicide" and "killed" are likewise inflammatory, argumentative, and designed to inflame the jury. These terms should be excluded under Fed. R. Evid. 403. There is no purpose for use of these terms or this type of language other than to evoke anger and punitive impulses, especially considering that other, more descriptive, factually accurate and less inflammatory terms are available.

**MOTION IN LIMINE NO. 8: TO EXCLUDE ANY REFERENCE TO WRONGDOING BY DAMACIO DIAZ AND/OR PATRICK MARA**

By and through this motion, Defendants seek to exclude any reference to wrongdoing by former Bakersfield Police Officers Damacio Diaz and/or Patrick Mara. Neither of these individuals were involved in the events leading up to this case and their wrongful conduct has nothing to do with the issues presented. This evidence is completely irrelevant and the danger of unfair prejudice and/or confusion is astronomical. In addition, it is a complete waste of time and resources and will unnecessarily prolong the trial of this case.

By way of brief background, Damacio Diaz and Patrick Mara are two former Bakersfield police detectives who were recently indicted for criminal conduct involving the sale of methamphetamine. These officers were terminated and are currently awaiting sentencing. Neither

officer was present at the time Mr. Dozer was shot. Mr. Mara is not referenced anywhere in the police report and there is nothing to suggest that he had any involvement or knowledge of this incident whatsoever. Damacio Diaz was at the scene and did interview two witnesses- Marco Cabrera and Carlos Cabrera. Both interviews were audio recorded after the incident.

The wrongful conduct of Mr. Mara and Mr. Diaz has absolutely nothing to do with this case. Neither man was present during the events leading up to this incident. The Plaintiff does not have any sort of *Monell* claim. The wrongful conduct of Mr. Mara and Mr. Diaz is nothing more than a distraction from the true issues in this case. It is misleading and prejudicial to the extent that it will do nothing more than suggest that Mr. Stringer's conduct was wrongful, essentially by association. It will prejudice the Defendants in the eyes of the jury who will surely punish the Defendants, not as a result of the facts of this case, but as a result of the wrongful conduct of two former police officers who were essentially "bad apples". There is a high probability of "guilt by association" which is clearly has a high risk of the jury drawing impermissible character inferences and is misleading. See e.g, *Castro v. Cnty. of L.A.*, 2015 U.S. Dist. LEXIS 103945, at *1 (C.D. CA Aug. 3, 2015); *Lopez v. Aitken,* 2011 U.S. Dist. LEXIS 16396, at *1 (S.D. CA Feb. 18, 2011).

This evidence is not only completely irrelevant under Fed. R. Evid 401, but its prejudicial value is astronomical in comparison to the non existent probative value.

Such evidence should be excluded.

### RESERVATION OF RIGHTS

Defendants reserve the right to file additional motions in limine or argue for the exclusion of testimony and exhibits as pretrial efforts continue and as the trial progresses.

Dated: September 15, 2016          MARDEROSIAN & COHEN


By:   /s/ Michael G. Marderosian
          Michael G. Marderosian,
          Attorney for Defendants above-named.

# DECLARATION OF MICHAEL G. MARDEROSIAN

I, Michael G. Marderosian, hereby declare as follows:

1.     I am an attorney at law licensed to practice in all courts of the State of California and am th attorney of record for Defendants CITY OF BAKERSFIELD and AARON STRINGER.

2.     During the course of this litigation, the Plaintiff has produced a slide show and a number of other photographs depicting Mr. Dozer as a young boy going into his early teens.  True and correct copies of the slide show and photographs are attached hereto as Exhibit A.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.  Executed on September 15, 2016, at Fresno, California.


/s/ Michael G. Marderosian
MICHAEL G. MARDEROSIAN

EXHIBIT A



## Michael L. Dozer

### June 26, 1988 - August 6, 2014



# Celebrating the Life of








































*Video Production Provided By:*

## Good Steward Productions

*Bakersfield , CA*

*goodstewardproductions@gmail.com*















