1

2

3

4

5

6

7

8

# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LESLIE LARAY CRAWFORD, | Case No.  1:14-cv-01735-SAB |
| Plaintiff, | ORDER RE DEFENDANTS' MOTIONS IN LIMINE NO. 1 AND 9 |
| v. | (ECF Nos. 45, 46, 48, 49, 52, 55, 74, 76, 78) |
| CITY OF BAKERSFIELD, et al., | |
| Defendants. | |

## I.

## BACKGROUND

On September 15, 2016, the parties filed motions in limine in this action.  On October 6, 2016, the Court conducted oral argument on the parties' motions in limine.  On this same date, Defendant filed a supplemental motion in limine no. 9.  During the hearing, the Court granted the parties the opportunity to file supplemental briefing on Defendants' motion in limine no. 1 and set a briefing schedule for the motion in limine no. 9 filed on October 6, 2016.  The Court issued an order addressing the parties' motions in limine filed September 15, 2016, but deferring ruling on Defendants' motion in limine no. 1.

On October 10, 2016, Defendants filed supplemental briefing regarding motion in limine no 1.  On October 12, 2016, Plaintiff filed supplemental briefing regarding Defendant's motion in limine no. 1 and an opposition to Defendants' motion in limine no. 9.  On October 13, 2016,

1

1  Defendants filed a reply to Plaintiff's opposition to motion in limine no. 9 and a reply to
2  Plaintiff's supplemental brief regarding motion in limine no. 1.[1]

3  **II.**

4  **LEGAL STANDARD**

5      A party may use a motion in limine to exclude inadmissible or prejudicial evidence
6  before it is actually introduced at trial.  See Luce v. United States, 469 U.S. 38, 40 n.2 (1984).
7  "[A] motion in limine is an important tool available to the trial judge to ensure the expeditious
8  and evenhanded management of the trial proceedings."  Jonasson v. Lutheran Child and Family
9  Services, 115 F.3d 436,440 (7th Cir. 1997).  A motion in limine allows the parties to resolve
10 evidentiary disputes before trial and avoids potentially prejudicial evidence being presented in
11 front of the jury, thereby relieving the trial judge from the formidable task of neutralizing the
12 taint of prejudicial evidence.  Brodit v. Cambra, 350 F.3d 985, 1004-05 (9th Cir. 2003).

13     Motions in limine that exclude broad categories of evidence are disfavored, and such
14 issues are better dealt with during trial as the admissibility of evidence arises.  Sperberg v.
15 Goodyear Tire & Rubber, Co., 519 F.2d 708, 712 (6th Cir. 1975).  Additionally, some
16 evidentiary issues are not accurately and efficiently evaluated by the trial judge in a motion in
17 limine and it is necessary to defer ruling until during trial when the trial judge can better estimate
18 the impact of the evidence on the jury.  Jonasson, 115 F.3d at 440.

19 **III.**

20 **DISCUSSION**

21     Currently pending before the Court are Defendants' motion in limine no. 1, filed
22 September 15, 2016, to exclude evidence regarding an incident involving Ramiro Villegas, and
23 Defendants' motion in limine no. 9 to preclude Plaintiff from offering evidence regarding
24 Decedent's mental health issues.

25 ///

26 ///

---

27 [1] The Court notes that the order addressing the motions in limine did not provide for a reply by Defendants to
28 motion in limine no. 1, and the pretrial order specifically noted that reply briefs to motions in limine would not be
    considered.

1    **A.      Defendants' Motion in Limine No. 1**

2        In November 2014, Defendant Stringer took a trainee to Kern Medical Center to view the

3    body of a suspect that had been killed by a Bakersfield police officer.  During the incident,

4    Defendant Stringer manipulated the body and made inappropriate comments.  Defendant Stringer

5    was ultimately terminated for the incident.  Defendants seek to exclude evidence of what

6    occurred during this incident arguing it has no relevance to the underlying action.  Defendant

7    Stringer was not involved in the shooting of this individual.

8        Plaintiff argues that Defendant Stringer instructed the trainee who was present during the

9    incident to falsely state to Bakersfield Police Department detectives that she did not see the body

10   of the shooting victim.  Plaintiff argues this is highly probative of Defendant Stringer's character

11   for truthfulness.  In their supplemental briefing, Defendants argue that this has no probative

12   value in this action and seek to exclude the evidence on the ground that the prejudice outweighs

13   its probative value and needlessly prolongs the case as it will result in Defendant Stringer

14   introducing evidence of his character for truthfulness.

15       1.    Allegation that Defendant Stringer Instructed Trainee to Lie

16       Rule 608 of the Federal Rules of Evidence provides:

17       Except for a criminal conviction under Rule 609, extrinsic evidence is not
18       admissible to prove specific instances of a witness's conduct in order to attack or
         support the witness's character for truthfulness.  But the court may, on cross-
         examination, allow them to be inquired into if they are probative of the character
19       for truthfulness or untruthfulness of: (1) the witness . . . .

20   Fed. R. Evid. 608(b).

21       During the trial of this action, the jury will be tasked with evaluating Defendant

22   Stringer's testimony regarding his perception of the events that occurred on the date of

23   Decedent's death to determine the reasonableness of his use of deadly force.  While Defendants

24   argue that this occurred after the excessive force allegations at issue in this action, this incident

25   occurred within approximately four months of the incident at issue here, and involves an

26   allegation that Defendant Stringer instructed a trainee to lie during an investigation to cover up

27   Defendant Stringer's wrongful conduct while on duty.  The Court finds that the allegation that

28   Defendant Stringer instructed a trainee to falsify information during an investigation to cover up

3

1   Defendant Stringer's misconduct is highly probative of his character for untruthfulness.

2        Defendants rely on <u>Foster v. Davis</u>, No. 10 C 6009, 2013 WL 6050147 (N.D. Ill. Nov.

3   15, 2013), in which the court found it was not error to preclude evidence that a correctional

4   officer had lied in a prior incident report.  In <u>Foster</u>, there was an investigation into whether the

5   officer had used excessive force in dealing with an inmate.  <u>Id.</u> at *3.  The plaintiff was arguing

6   that a disciplinary report found that the correctional officer had previously filed an incident

7   report that was untruthful.  <u>Id.</u>  The report issued in the investigation stated that evidence "did

8   not support the version of events provided" by the correctional officer.  <u>Id.</u>  The court found that

9   the prior incident report contained no specific findings that the officer had lied in the prior report.

10  <u>Id.</u>  The Court finds this to be distinguishable from the situation presented here where the

11  allegation is based upon specific statements of a witness that Defendant Stringer told her to lie

12  during an investigation.

13         2.    <u>Probative Value is Not Substantially Outweighed by the Factors Identified in Rule</u>
14                <u>403</u>

15       Defendants argue that Plaintiff should be precluded from asking whether Defendant

16  Stringer ever instructed the trainee to lie during the investigation because it is not relevant to

17  Defendant Stringer's character for truthfulness at the time the incident alleged in this action

18  occurred, will needlessly prolong the trial of this action, and will shift the jury's focus away from

19  the actual issues in this action.

20       Evidence under Rule 608 is also subject to exclusion, "if its probative value is

21  substantially outweighed by a danger of one or more of the following: unfair prejudice,

22  confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting

23  cumulative evidence."  Fed. R. Evid. 403.

24       First, as discussed above, the Court finds that the allegation is highly probative as to

25  Defendant Stringer's character for truthfulness in this action.  Defendant argues that the evidence

26  is so tangential that it has no probative value.  However, the incident was close in time to the

27  incident at issue in this action, approximately four months, and involved allegations that

28  Defendant Stringer instructed a trainee to lie during an investigation into Defendant Stringer's

1    conduct.

2          "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than

3    it would be without the evidence; and (b) the fact is of consequence in determining the action."

4    Fed. R. Evid. 401.  The jury will be tasked with determining which testimony to believe in this

5    action.  Evidence that Defendant Stringer instructed a trainee to lie would make it less probable

6    that his testimony in this action is truthful.  Therefore, the Court rejects the argument that the

7    incident should be precluded because it is irrelevant in this action.

8          Although Defendants argue that the evidence is prejudicial, they do not address any

9    prejudice that would result should Plaintiff be allowed to propound the question to Defendant

10   Stringer during trial.  To the extent that the question suggests that Defendant Stinger would be

11   untruthful to protect himself that is what creates the high probative value of the allegation.

12         Defendants also argue that allowing Plaintiff to ask the question will require them to call

13   multiple witnesses to testify to the character of Defendant Stringer including commendations that

14   Defendant Stringer received prior to this incident.  Pursuant to Rule 608, "evidence of truthful

15   character is admissible only after the witness's character for truthfulness has been attacked.  Fed.

16   R. Evid. 608(a).  Therefore, if Plaintiff questions Defendant Stringer regarding the allegations

17   that he instructed a trainee to lie during an investigation, Defendant Stringer may present

18   witnesses to testify to his character for truthfulness.  However, the Court will limit the number of

19   witnesses and only testimony regarding Defendant Stringer's character for truthfulness would be

20   admissible.  Therefore, the Court does not find that allowing Plaintiff to question Defendant

21   Stringer regarding whether he told a trainee to lie during an investigation would result in undue

22   delay or wasting the jury's time.

23         Finally, Defendants argue that it will shift the focus away from the issue to be decided in

24   this action, which is whether Defendant Stringer used excessive force.  However, Defendant

25   Stringer's testimony regarding what occurred during the incident is unquestionably relevant to

26   this action; and therefore, his truthfulness is at issue.  Allowing Plaintiff to question Defendant

27   Stringer regarding whether he had instructed a trainee to lie during an investigation, while

28   placing the focus on the truth of Defendant Stringer's testimony, does not place the focus on

1  incidents other than that at issue here.

2      The Court finds that the probative value of the questioning substantially outweighs the

3  risk of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or

4  needlessly presenting cumulative evidence.

5      3.   <u>Extrinsic Evidence is Not Admissible to Impeach Defendant Stringer's Credibility</u>

6      While the opposing party may impeach a witness with specific incidents of conduct that

7  are probative of his character for truthfulness or untruthfulness if he has a good faith basis for the

8  questioning, the party is precluded by Rule 608(b) from offering extrinsic evidence concerning

9  the incident in question.  <u>United States v. Crowley</u>, 318 F.3d 401, 418 (2d Cir. 2003); <u>United</u>

10  <u>States v. Estell</u>, 539 F.2d 697, 700 (10th Cir. 1976) ("[t]he showing must be in the form of cross-

11  examination of the witness himself; extrinsic evidence may not be introduced.")  Accordingly,

12  Plaintiff may, on cross examination, question Defendant Stringer regarding whether he instructed

13  the trainee to falsify information during an investigation, however, no extrinsic evidence of the

14  incident is admissible for the purposes of impeachment.  In other words, while Plaintiff may

15  inquire of Defendant Stringer if the incident occurred, she will have to live with the answer given

16  by Defendant Stringer.

17      [E]xtrinsic evidence of such acts is always deemed collateral.  On the one hand,
18      even under the general rule if the witness initially denies perpetrating the act, the
    cross-examiner may pressure the witness for an honest answer by reminding the
19      witness of the penalties of perjury and perhaps by confronting the witness with his
    own writing mentioning the act.  On the other hand, when the witness sticks to his
20      guns and adamantly refuses to concede the act, the cross-examiner must "take the
    answer" even though it would be relatively easy for the cross-examiner to expose
21      the perjury.  Even if a person with personal knowledge of the witness's act were
    sitting in the courtroom, the cross-examiner could not later call that person to the
22      stand to prove the prior witness's commission of the deceitful act.

23  1 McCormick on Evidence §49 (7th ed.).

24      Plaintiff argues that the circumstances of the incident are inextricably intertwined with

25  the allegations that Defendant Stringer instructed the trainee to testify falsely.  However, the

26  Court disagrees.  The issue to be presented to the jury is that during an investigation, Defendant

27  Stringer instructed a trainee to make a false statement.  The substance of the statement is

28  irrelevant, it is the fact that Defendant Stringer instructed the trainee to make the false statement

1    that is probative on the issue of his truthfulness.

2          Further, the incident at Kern Medical Center is unrelated to this action and the allegations
3    against Defendant Stringer are in no manner similar to the claims in this action.  It is undisputed
4    that Defendant Stringer was not involved in the shooting of the decedent in the Kern Valley
5    Medical Center incident.  Evidence of the allegations in the Kern Valley Medical Center incident
6    are directed at the character of Defendant Stringer and admission of such evidence raises the
7    substantial risk of prejudice to Defendants that the jury could decide to punish Defendant
8    Stringer for his actions in this unrelated incident at the Kern Valley Medical Center.  Further, the
9    Court finds that admission of such evidence would result in unnecessarily wasting the jury's
10   time.  Accordingly, the Court finds that the November 2014 incident at Kern Medical Center is
11   improper character evidence under Rule 608, and to the extent that there is any relevance in this
12   action, should be excluded pursuant to Rule 403.

13         Finally, Defendants argue that Plaintiff did not disclose this witness in her Rule 26
14   disclosures.  However, Rule 26 provides that a party must provide to the opposing party the
15   "name and, if known, the address and telephone number of each individual likely to have
16   discoverable information--along with the subjects of that information--that the disclosing party
17   may use to support its claims or defenses, unless the use would be solely for impeachment."
18   Fed. R. Civ. P. 26(a)(1).  See Gribben v. United Parcel Serv., Inc., 528 F.3d 1166, 1172 (9th Cir.
19   2008) ("impeachment evidence does not have to be revealed in pretrial disclosure").  Therefore,
20   Rule 26 does not provide a ground for exclusion of the evidence.

21         4.    Impeachment by Contradiction

22         Plaintiff argues that extrinsic evidence would be admissible as impeachment by
23   contradiction if Defendant Stringer testifies that he did not instruct the trainee to lie during the
24   investigation.

25         Impeachment by contradiction is governed by Rule 607 of the Federal Rules of Evidence.
26   United States v. Castillo, 181 F.3d 1129, 1133 (9th Cir. 1999).  Impeachment by contradiction
27   permits the admission of extrinsic evidence that specific testimony is false because it is
28   contradicted by other evidence.  Castillo, 181 F.3d at 1133.

> [D]irect-examination testimony containing a broad disclaimer of misconduct sometimes can open the door for extrinsic evidence to contradict even though the contradictory evidence is otherwise inadmissible under Rules 404 and 608(b) and is, thus, collateral. This approach has been justified on the grounds that the witness should not be permitted to engage in perjury, mislead the trier of fact, and then shield himself from impeachment by asserting the collateral-fact doctrine.

Id. (quoting 2A Charles A. Wright & Victor J. Gold, Federal Practice and Procedure, § 6119 at 116–17 (1993)).  In Castillo, the Ninth Circuit recognized that courts are more willing to allow impeachment by contradiction where the testimony is volunteered on direct examination, but that there may be situations where testimony given during cross-examination may be impeached by contradiction.  Castillo, 181 F.3d at 1134.

Plaintiff relies on U.S.A. v. Boyajian, No. CR09-933(A)-CAS, 2016 WL 225724 (C.D. Cal. Jan. 19, 2016), in support of her argument that extrinsic testimony would be admissible should Defendant Stringer deny on cross examination that he instructed a trainee to lie.  In Boyajian, the defendant was charged with one count of travel with intent to engage in illicit sexual contact with a minor, one count of engaging in illicit sexual contact with a minor, and one count of commission of a felony offense involving a minor while required to register as a sex offender.  Boyajian, 2016 WL 225724, at *1.)  The government brought a motion in limine to admit evidence to impeach the defendant if he testified at trial.

Specifically, the government sought to admit evidence that during his state court proceedings alleging similar allegations, the defendant had instructed his victim to testify that he had not engaged in sexual activity with her.  Id. at *6.  When the victim expressed concern that she would be committing perjury, he told her "no one prosecutes perjury."  Id.  The defendant also threatened to sue her family and take everything they had and threatened that he might have to kill her father if she told what had happened.  Id.  If the defendant testified at trial, the government sought to admit transcripts of telephone conversations between the defendant and the victim in which he repeatedly instructed the victim to lie about their relationship so he would not have to go to jail.  Id. at *10.  The court found that these incidents were highly probative of his propensity to tell the truth and if he testified it was likely that he would attempt to contradict the testimony of his alleged victim.  Id. at *10.  The court held that, in this case, the defendant's

1    credibility would be of crucial importance because the jury would have to believe either the

2    victim or the defendant's version of the events.  Id.

3           Relying on United States v. Diaz, No. 2:13-CR-00148-JAD, 2014 WL 4384492 (D. Nev.

4    Sept. 4, 2014), appeal dismissed (Nov. 4, 2014), Defendants reply that Plaintiff cannot impeach

5    by contradiction solely to show that the witness is lying.  In Diaz, the trial court did not allow

6    extrinsic evidence where the purpose of the extrinsic evidence was to show the officer was a liar

7    and untruthful in his investigation.  Id. at *10.

8           The Court finds that the testimony sought to be presented in this matter is distinguishable

9    from that sought to be admitted in Boyajian.  While in Boyajian, the defendant had been charged

10   with a similar crime and had attempted to persuade his victim to lie, there is no similarity

11   between the evidence that Defendant Stringer instructed a trainee to lie during an investigation

12   and whether he used excessive force in this action.  Further, the Boyajian court was presented

13   with transcripts of conversations between the victim in the previous case and the defendant.

14   Therefore, the evidence was easily admissible and was not likely to evolve into a separate trial of

15   an unrelated issue.  Finally, the Government sought to admit the testimony to prove that the

16   defendant had engaged in similar sexual conduct with the alleged victim in the action.

17          Similar to Diaz, it appears that Plaintiff is attempting to admit extrinsic evidence that

18   Defendant Stringer asked someone in a different incident to lie so that she can show that

19   Defendant Stringer is being untruthful here.   If this is the case, it would be improper

20   impeachment by contradiction.  See United States v. Kozinski, 16 F.3d 795, 806 (7th Cir. 1994)

21   ("one may not contradict for the sake of contradiction; the evidence must have an independent

22   purpose and an independent ground for admission").

23          In this instance, Plaintiff seeks to admit extrinsic evidence upon the cross examination of

24   Defendant Stringer.  The issue of whether extrinsic evidence would be admissible upon the cross

25   examination of Defendant Stringer as impeachment by contradiction is not capable of being

26   decided in a motion in limine.  Accordingly, if Plaintiff determines that such evidence is

27   admissible following the cross examination of Defendant Stringer, she is required to address the

28   matter with the Court outside the presence of the jury.

5.      Plaintiff May Cross Examine Defendant Stringer Regarding Allegation He Instructed Trainee to Lie During an Investigation

Based on the foregoing, the Court finds that Plaintiff may, on cross-examination, inquire of Defendant Stringer whether he has instructed a trainee to lie during an investigation. However, absent evidence elicited at trial, no extrinsic evidence is admissible to impeach Defendant Stringer and the substance of the underlying investigation is not to be inquired into during the trial of this action.

**B.      Defendants' Motion in Limine No. 9**

Defendants' motion in limine no. 9 seeks to exclude evidence that Decedent was schizophrenic or suffered from any mental illness.  Defendants argue that this information was unknown to Defendant Stringer at the time of the incident and Plaintiff should not be permitted to testify to Decedent's condition because she is not medically qualified and any testimony she could render would be hearsay.

1.      Decedent's Mental Illness

Defendants first move to exclude the evidence on the ground that Defendant Stringer did not know that Decedent suffered from mental illness or schizophrenia and the evidence of mental illness should be excluded on the same basis that Plaintiff sought to exclude evidence of Decedent's bad acts.  The question to be decided in addressing whether Decedent's mental illness is relevant in this action is would the evidence make a fact of consequence in determining the action more or less probable than it would be without the evidence. Fed. R. 401.  In an excessive force action, the relevant "question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation."  Graham v. Connor, 490 U.S. 386, 397 (U.S. 1989); Smith v. City of Hemet, 394 F.3d 689, 701 (9th Cir. 2005).

Here, Decedent had just pulled the gasoline hose from a vehicle and set gasoline on fire at a gas station.  When Defendant Stringer arrived at the scene he observed Decedent pacing back and forth.  Decedent made statements to Defendant Stringer as he approached.  Clearly, in determining the reasonableness of Defendant Stringer's decision to fire his weapon Decedent's

actions prior to Defendant Stringer drawing and firing his weapon are relevant.  Based on his knowledge of what was alleged to have occurred and the observed behavior, Defendant Stinger believed Decedent was under the influence of a drug like PCP, which makes individuals very agitated and angry.  Plaintiff contends that it was Decedent's mental health issues that were causing this behavior.

Unlike Decedent's prior criminal history, which would not be evident from the observations made by Defendant Stringer in interacting with Decedent, it was evident to Defendant Stringer that Decedent was angry and acting in an aggressive manner.  Whether this was due to being under the influence of a drug such as PCP or because Decedent was suffering from mental illness is relevant to determining whether the force used in this instance was reasonable.    Therefore, Defendants' motion to exclude evidence that Decedent was schizophrenic or suffered from any mental illness is denied.

However, the issue remains as to the competency of the witnesses in this action to testify as to Decedent's mental illness.  Defendants move to preclude Plaintiff from offering such evidence arguing she is not competent to offer evidence as to Decedent's mental health issues. Defendants move to exclude any such testimony by Plaintiff on the grounds that it would be hearsay and that she is not qualified as a medical expert in this action.  Plaintiff responds that the testimony as to Decedent's mental illness is relevant because officers are trained to recognize behavioral indicators that are typically associated with mental illness and Decedent demonstrated each of those behaviors.  Plaintiff counters that there will be significant expert testimony concerning the behavioral indicators associated with mental illness and how officers are trained to respond.  Defendant responds that Plaintiff did not designate an expert to present medical testimony in this action; and Plaintiff's use of force expert is not competent to render medical testimony nor is any other witness so qualified.

### a.    Expert Testimony

Under the Federal Rules of Evidence a "witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: a) the expert's scientific, technical, or other specialized knowledge will help the

trier of fact to understand the evidence or to determine a fact in issue; b) the testimony is based upon sufficient facts or data; c) the testimony is the product of reliable principles and methods; and d) the witness has applied the principles and methods reliably to the facts of the case."  Fed. R. Evid. 702.  If a witness is not testifying as an expert in the action, "the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness; (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."  Fed. R. Evid. 701.

A witness is competent to testify to those matters of which they have personal knowledge.  Fed. R. Evid. 601, 602.  "[L]ay witnesses have been held incompetent to testify as to the existence or treatment of physical illnesses" and mental condition.  Frisone v. United States, 270 F.2d 401, 403 (9th Cir. 1959).  While a witness may testify to her own observations and opinions that are rationally based on the perception of the witness, the existence or treatment of a mental illness "falls clearly outside the area of common knowledge and within the area where expert testimony is required."  Frisone, 270 F.2d at 403.  Therefore, Plaintiff may not present lay witness testimony regarding the existence or treatment of a mental illness.

While Plaintiff may present lay witness testimony regarding factual matters and opinions within her personal knowledge regarding Decedent's mental condition, the issue is that Plaintiff is not testifying as to her observations on the date of the incident but as to her prior knowledge of Decedent's mental illness.  However, it is undisputed that Defendant Stringer had no prior knowledge of Decedent and was therefore unaware of any prior history of mental illness.  Although Plaintiff may present expert testimony in the liability phase of trial regarding indicators of mental illness and the training officers receive, Plaintiff's testimony regarding her observations of Decedent on other occasions is not relevant to the issue of whether Defendant Stringer should have known that that Decedent's behavior could have been caused by mental illness.

Plaintiff also argues that Decedent's history of mental illness is relevant to whether Decedent's award of damages will be reduced on the basis of his comparative fault.  Defendants

1  did not respond to this specific argument.

2  "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than

3  it would be without the evidence; and (b) the fact is of consequence in determining the action."

4  Fed. R. Evid. 401.  However, in California, "[a] person of unsound mind, of whatever degree, is

5  civilly liable for a wrong done by the person."  Cal. Civ. Code § 41.  Therefore, courts have held

6  that a mental illness is not a defense to negligence.  Bashi v. Wodarz, 45 Cal. App. 4th 1314,

7  1323 (1996).  Liability for negligence in California is predicated on an objective reasonable

8  person standard.  Bashi, 45 Cal.App.4th at 1323.  The Court finds this to be consistent with the

9  California jury instruction defining negligence.

10  A person is negligent if he or she does something that a reasonably careful person
    would not do in the same situation or fails to do something that a reasonably
11  careful person would do in the same situation.

12  California Civil Jury Instruction 401.  Therefore, the Court finds that Decedent's mental illness is

13  not relevant on the issue of comparative fault.[2]

14  Accordingly, Defendants' motion in limine no. 9 to exclude testimony regarding

15  Decedent's mental illness is granted.

16  / / /

17  / / /

18  / / /

19  / / /

20  / / /

21  / / /

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

27  [2] Defendants also seek to exclude evidence of Decedent's mental illness on the ground of hearsay.  As the Court has
    found that Plaintiff is not competent to testify as to the existence or treatment of a mental illness and Decedent's
28  mental illness is irrelevant to damages, the Court declines to address the hearsay issue.

1

**IV**

**CONCLUSION AND ORDER**

Based on the foregoing, IT IS HEREBY ORDERED that:

1.    Defendants' motion in limine no. 1 to exclude evidence regarding an incident involving Ramiro Villegas is GRANTED IN PART AND DENIED IN PART as follows:

a.    Defendants motion to exclude evidence of the November 2014 incident at Kern Medical Center involving Ramiro Villegas is GRANTED.   However, on cross examination, Defendant Stringer's instruction to a trainee to falsify information during an investigation may be inquired into; and

2.    Defendants' motion in limine no. 9 is GRANTED.

IT IS SO ORDERED.

Dated:   **October 13, 2016**

UNITED STATES MAGISTRATE JUDGE