1              UNITED STATES DISTRICT COURT

2            EASTERN DISTRICT OF CALIFORNIA

3                    --oOo--

4  LESLIE LARAY CRAWFORD,        ) Case No. 14CV01735-SAB
                                 )
5            Plaintiff,          ) Fresno, California
                                 )
6       vs.                      ) Thursday,
                                 ) October 6, 2016
7  CITY OF BAKERSFIELD, et al.,  ) 2:00 p.m.
                                 )
8            Defendants.         )
   _____)

9

10         TRANSCRIPT OF MOTIONS IN LIMINE HEARING
            BEFORE THE HONORABLE STANLEY A. BOONE
11              UNITED STATES MAGISTRATE JUDGE

12

   APPEARANCES:
13
   For the Plaintiff:          BRIAN DUNN, ESQ.
14                             The Cochran Firm California
                               4929 Wilshire Boulevard
15                             Suite 1010
                               Los Angeles, California 90017
16                             (323) 435-8205

17 For the Defendants:         MICHAEL G. MARDEROSIAN, ESQ.
                               HEATHER S. COHEN, ESQ.
18                             Marderosian & Cohen
                               1260 Fulton Mall
19                             Fresno, California 93721
                               (559) 441-7991
20
   Transcriber:               Crystal Thomas
21                             Echo Reporting, Inc.
                               4455 Morena Boulevard
22                             Suite 104
                               San Diego, CA 92117
23                             (858) 453-7590

24

   Proceedings recorded by electronic sound recording;
25 transcript produced by transcription service.

*Echo Reporting, Inc.*

1

1   FRESNO, CALIFORNIA, THURSDAY, OCTOBER 6, 2016 2:00 P.M.

2                          --oOo--

3       (Call to order of the Court.)

4           THE CLERK:  In the matter of Leslie Laray Crawford

5   versus City of Bakersfield, 14CV1735, motions in limine

6   hearing.

7           THE COURT:  All right.  Appearances on behalf of

8   the Defense.

9           MR. MARDEROSIAN:  Defense is Michael Marderosian

10  on behalf of the City of Bakersfield and Heather Cohen who

11  is presently on Court Call, your Honor.

12          THE COURT:  All right.  Good morning -- or good

13  afternoon to both of you.  Do you know where Plaintiff's

14  counsel would be?

15          MR. MARDEROSIAN:  No.

16          THE COURT:  All right.  Mr. Marderosian, you had

17  something -- or had you already taken care of it or was it

18  later this afternoon?

19          MR. MARDEROSIAN:  No, I'm okay.  That matter has

20  been moved.  It was in Fresno Superior Court, and yesterday

21  we got an order that it was being moved.  So we can wait for

22  Plaintiff's counsel to join or whatever the Court's

23  comfortable with, your Honor.

24          THE COURT:  That's ironic.  I should have

25  exercised the supremacy clause, because we moved this to

2

1  accommodate your schedule, and my only worry is maybe

2  counsel didn't pick up on that.

3          MR. MARDEROSIAN:  Well, no, I think --

4          MS. COHEN (telephonic):  Well, yes, your Honor.

5  We had contacted Plaintiff's counsel in advance of

6  contacting your clerk to --

7          THE COURT:  Okay.

8          MS. COHEN:  -- make sure that he would be

9  available for the earlier time, and then I believe Ms.

10 Hernandez issued a minute order, but I can send them a quick

11 email or call them on my cell phone and see if there is

12 something that's holding up --

13         THE COURT:  Yes.  I know they got notice.

14 Sometimes it doesn't really get to the physical where they

15 change their calendar to reflect it.  That was my only

16 concern.

17         MS. COHEN:  Sure.

18         MR. MARDEROSIAN:  Why don't you give them a call,

19 Ms. Cohen, or email them.

20         THE COURT:  I can have --

21         MS. COHEN:  I just sent them a quick email, and I

22 can give them a call as well.

23         THE COURT:  All right.

24         MS. COHEN:  I'm just going to put you on mute.  So

25 don't go away.

3

1          THE COURT:  I'll try not to.

2      (Pause.)

3          MR. MARDEROSIAN:  And I take it the Court did

4  receive our initial motion in limine that we filed today.  I

5  have a -- I have a copy here if the Court would like.

6          THE COURT:  Yes, give me a copy.

7          MR. MARDEROSIAN:  All right.

8          THE COURT:  If you filed it today, probably not.

9      (Pause.)

10          MR. MARDEROSIAN:  I met and conferred with

11  Plaintiff's counsel on this issue.  So that's why I know

12  that he was aware of the hearing --

13          THE COURT:  Okay.

14          MR. MARDEROSIAN:  -- today, yeah.

15          THE COURT:  Just a question of the time.  Was he

16  going to -- was he going to be here live?

17          MR. MARDEROSIAN:  Well, I didn't know.  I don't

18  know.  I know when he was emailing me, it was from his email

19  from a computer.  It wasn't from a handheld device.

20          THE COURT:  Okay.

21          MR. MARDEROSIAN:  So I assumed that he was going

22  to call in, but --

23          THE COURT:  No request was made for a call in.  So

24  that's why.

25          MR. MARDEROSIAN:  Oh, really?

4

1          THE COURT:  Yeah.

2          MR. MARDEROSIAN:  Oh, maybe --

3          MS. COHEN:  Your Honor, I just spoke with him.  He

4   is going to call in right now.  He didn't have the pass code

5   I guess to access the court.  So I provided that to him, and

6   he'll be dialing in right now.

7          THE COURT:  Yeah, that's why he's supposed to

8   check.  He's supposed to contact the courtroom clerk.  That

9   way we know he's appearing by phone.  That's the quid pro

10  quo.

11         MS. COHEN:  I understand.

12         THE COURT:  He gets the pass code and the number.

13         MS. COHEN:  I understand, your Honor.

14     (Pause.)

15         MR. DUNN:  (telephonic):  Hi.  This is Brian Dunn.

16         THE COURT:  All right.  Mr. Dunn, you are late.

17         MR. DUNN:  I apologize.  We had the wrong access

18  code, your Honor.  I apologize.

19         THE COURT:  All right.  All right.

20         Ms. Hernandez, you may call the matter.

21         THE CLERK:  In the matter of Leslie Laray Crawford

22  versus City of Bakersfield, 14CV1735, motions in limine

23  hearing.

24         THE COURT:  All right.  If I could have

25  appearances, beginning with the Plaintiff, please.

5

1          MR. DUNN:  Thank you, your Honor.  Brian Dunn on

2  behalf of the Plaintiff, Leslie Laray Crawford.

3          MR. MARDEROSIAN:  This is Mike Marderosian on

4  behalf of the Defendants, your Honor, in court, and Heather

5  Cohen is on call appearing for the Defendants as well.

6          THE COURT:  All right.  Good afternoon to all of

7  you.

8          All right.  We're here for the Plaintiff's and

9  Defendants' motions in limine.  The Court intends to go

10  through them, give its tentative decision, and then if

11  anybody disagrees with that, there will be brief argument.

12          First moving to Plaintiff's motion in limine

13  number one to exclude evidence that no criminal charges or

14  discipline were imposed on Defendant Stringer due to the

15  incident.  The Court's tentative is to grant that.

16          Anybody wish to be hear?  All right.  Moving on,

17  then that will become the final ruling.

18          As to Plaintiff's request number two, exclude

19  evidence of prior bad acts of the decedent in the case, the

20  Court's tentative is to exclude and grant that request.

21          Does anybody wish to be heard on that?

22          All right.  Moving on to the next motion in limine

23  number three, exclude evidence of prior bad acts of the

24  decedent's father, Michael Dozer, the Court intends to grant

25  that in part and deny in part.  Should Mr. Dozer testify as

6

1 a witness in this action, his June 2015 conviction for a

2 violation of California Penal Code Section 487 is admissible

3 for impeachment purposes.

4        The Court is not in a position at this time to --

5 that the other convictions would be admissible at trial.

6        Does anybody wish to be heard on that?

7        MR. DUNN:  Not from the Plaintiff, your Honor.

8        THE COURT:  All right.  All right.  Moving on to

9 number four, evidence of prior bad acts of the Plaintiff,

10 that is granted in part and denied in part.  The Plaintiffs

11 may use the prior felony conviction for welfare fraud and

12 misdemeanor convictions for destroying evidence, concealing

13 evidence, and providing false identification to a police

14 officer as impeachment evidence if the Plaintiff testifies

15 at trial.  Admissibility on the motion as to the time spent

16 in prison I cannot determine at this time.  So that is why

17 it is -- it is denied in part.

18        Accordingly, the Court shall defer ruling until

19 the Plaintiff testifies in this action.

20        Does anybody wish to be heard on that?

21        MR. DUNN:  Not at this time, your Honor.

22        THE COURT:  All right.  Moving on then to the

23 Defendants' motion in limine.  Request number one, that is,

24 to exclude evidence regarding the morgue, that tentative

25 ruling is granted in part and denied in part.

7

1          The Court believes that Defendant Stringer's

2    instructions to a trainee to falsify information about an

3    investigation was highly probative of his character for

4    truthfulness.  So it would be admissible under 608(a) for

5    purpose of impeachment if Defendant Stringer testifies.

6          As to the incident at the Kern Medical Center, the

7    Court finds that that is improper character evidence and,

8    therefore, should be excluded under the Rules.

9          Anybody wish to be heard on that?

10          MR. MARDEROSIAN:  Yes, I do wish to be heard on

11   that, your Honor.

12          THE COURT:  Yes.

13          MR. MARDEROSIAN:  That, to me, in regard to motion

14   in limine number one filed by the Plaintiff to exclude the

15   fact that he was exonerated, when compared to this ruling is

16   to me inconsistent, and it's not fair.  Officer Stringer has

17   a good character, and the issue regarding the so-called

18   "tickle" incident, there has been no finding of evidence or

19   any proof as to what exactly happened.  There's been no

20   hearing.  No witnesses have testified for or against to

21   create a record.  There's been no finding of what occurred

22   in that regard, and --

23          THE COURT:  You mean with the falsification part?

24          MR. MARDEROSIAN:  When you say falsification part?

25          THE COURT:  Tells -- tells the officer -- the

8

1 trainee to falsify the report.

2          MR. MARDEROSIAN:  Well, I mean, that's --

3          THE COURT:  That's what it's really -- that's the

4 limitation on it.

5          MR. MARDEROSIAN:  That was her version.  There's

6 been no finding by any court that he -- he did that or had

7 the intent to falsify anything, your Honor, that I'm aware

8 of.

9          MS. COHEN:  No, nor have there been any criminal

10 charges or criminal conviction arising out of any of that --

11 that incident.

12          THE COURT:  Well, it's not --

13          MS. COHEN:  Or those allegations.

14          THE COURT:  It's not inconsistent with number one.

15 The Court feels it is not inconsistent with number one

16 because it's -- it's a form of vouching, but as to the 608

17 issue, as to his character for untruthfulness and

18 untruthfulness, it depends on how it is proffered, but when

19 you made those broad statements, I can't grant it in and of

20 itself.  That is a proper impeachment question potentially,

21 potentially.

22          MR. MARDEROSIAN:  But, your Honor, if we examine

23 -- let's -- let's look at the quality of the evidence that

24 we're dealing with here.  There was a trainee that alleged

25 that that's what he said and done.  Now, ultimately, Officer

9

1 Stringer left the department, but there has been no

2 examination under oath of any -- any witnesses in that

3 regard.

4          THE COURT:  Not that it's required.  Nothing is

5 required.  Nothing is required under oath.

6          MR. MARDEROSIAN:  I understand that.  But, I mean,

7 let me say this, your Honor.  That trainee, she's not

8 designated as a witness.  I'm unaware that she's been

9 designated as a witness in this trial.  So how -- how -- if

10 we look at the quality of the evidence, I mean -- and she'd

11 have to come and testify, and I'd have to cross examine her

12 so the jury can determine whether or not she's being

13 accurate or truthful in regards to what she claims that she

14 heard Officer Stringer say.

15          THE COURT:  Well, Mr. Dunn, are you -- how are you

16 intending to -- it depends on how he depends to bring it in.

17 How are you intending -- go ahead.

18          MR. DUNN:  Okay.  And I apologize, your Honor.  I

19 didn't mean to talk so quickly.  Number one, with regard to

20 her status, she would be a rebuttal witness, and she would

21 be a rebuttal witness only.  I would ask him a question that

22 would not reference any aspect of the incident, such as

23 "Have you ever instructed another police officer to give any

24 kind of a dishonest account of any incident that you may

25 have witnessed or have you ever instructed any police

1 officer to file a false report concerning anything that

2 you've witnessed or conceal any wrongdoing you may have

3 done?"  If he answers no, which I expect that he will, this

4 witness would come in the rebuttal case to testify

5 concerning this specific matter, that she was instructed to

6 either conceal or falsify.

7         Now, I'm not aware of any legal standard that

8 requires there be a formal finding under oath that this

9 occurred or a formal conviction under oath for this type of

10 event to occur.  Under 608(a), this is impeachment based on

11 his character for truthfulness, which is central to all of

12 the issues in this case.

13         THE COURT:  All right.  Okay.  I see how you're

14 proffering it.  All right.  As to his proffer --

15         MR. MARDEROSIAN:  Your Honor?

16         THE COURT:  Yeah.

17         MR. MARDEROSIAN:  This issue is so far afield in

18 terms of relevance and in terms of impeachable evidence.  If

19 the Court is going to -- going to apply that standard, then

20 in regard to Mr. Dozer's history, prior bad acts, all of the

21 activities that -- that cause him to run in with the law and

22 the different issues that came up there, if we -- if we want

23 to try the case on that basis, then we should be allowed to

24 go into his complete history as well as to Mr. Crawford's

25 history.

11

1          THE COURT:  I think you're -- you're already in

2   your trial mode, but it is a different issue with character

3   evidence as opposed to impeachment under 508.  The character

4   for truthfulness and untruthfulness, the fact that the

5   decedent may have bad acts or -- or that the Defendant in

6   this case may have bad acts -- which I'm going to get to

7   later in your motions in limine -- isn't relevant.  This is

8   an issue of truthfulness and untruthfulness.

9          MR. MARDEROSIAN:  There's been no finding of

10  any --

11         THE COURT:  None is required.  None is required.

12  Do you agree or don't agree?

13         MR. MARDEROSIAN:  I completely disagree.

14         THE COURT:  Okay.  What's your -- what's your

15  authority that it is required for a finding?

16         MR. MARDEROSIAN:  Your Honor, there is a mere

17  allegation by a trainee that that's what he said, and that's

18  all that there is.  For the Court -- first of all, on the

19  basis of relevancy, to allow that in this trial, I don't see

20  where the connection is in regard to the relevancy or the

21  probative value of that -- of that evidence.

22         THE COURT:  So you're applying a relevancy under

23  401.  608 is an impeachment that goes to a witness's

24  credibility.  That is what 608 -- that's why it's in the 600

25  series as opposed to the 400 series.  You're trying to

12

1  analyze it, and you're trying to direct the Court to a -- to

2  a relevancy to the case in chief.  That is not the analysis.

3  This is a credibility determination, and it's very limited.

4           MR. MARDEROSIAN:  I understand, your Honor.

5           THE COURT:  I know you understand, but you're also

6  leading me down the -- the relevance.

7           MR. MARDEROSIAN:  I'm sorry, your Honor, but my

8  issue deals with the quality of the evidence that the Court

9  is relying upon.

10          THE COURT:  So -- so --

11          MR. MARDEROSIAN:  There's been no findings --

12          THE COURT:  None is required.

13          MR. MARDEROSIAN:  But there hasn't even been any

14  testimony under oath from anyone in terms of the quality of

15  evidence.  Setting aside the relevancy of it, the quality of

16  something where someone is basically saying he -- he tried

17  to get me to do or say X, and that's all there is, and

18  you're now going to allow that in this trial?

19          THE COURT:  Yeah.

20          MR. MARDEROSIAN:  In this --

21          THE COURT:  That's my tentative ruling.

22          MR. MARDEROSIAN:  Then why can't I offer in

23  evidence, for example, the fact in this matter he wasn't

24  disciplined.  There was no internal investigation.  There

25  was no -- there -- there -- why can't we -- why can't we

13

1 introduce that evidence?

2          THE COURT:  Because that doesn't go to

3 truthfulness or untruthfulness.  That is vouching as to the

4 witness's character.  It is a different analysis.  Have you

5 -- you want to lump it together, but it's not lumpable

6 together.  The way that it has been proffered to me by the

7 Plaintiff's counsel is that he intends to bring a percipient

8 witness in.  This is not one of these things where they can

9 ask him something that's based upon hearsay.  He would bring

10 in a witness that would impeach.  That goes to the

11 credibility.  It's a direct percipient witness to the

12 incident.

13          You get to test it.  You get to cross examine.

14 I'm sure you're capable of doing that, and the jury

15 determines who's telling the truth as to the credibility

16 issue.

17          MR. MARDEROSIAN:  Well, how -- what is -- what is

18 the scope of what the Court is proposing here?

19          THE COURT:  Just exactly the way that it was

20 proffered by the Plaintiff's counsel.  That's why I asked

21 the Plaintiff.  Now, if -- if the officer said -- or if the

22 Plaintiff's counsel said, "Well, I'm going to introduce the

23 report," that's an entirely different aspect.

24          MR. MARDEROSIAN:  No.  What I want to know is if

25 Mr. Stringer is on the witness stand, what specifically is

14

1  the question that Mr. Dunn can ask him that raises his

2  credibility in --

3           THE COURT:  He proffered the question.

4           MR. MARDEROSIAN:  I'd like to hear it again.  I --

5           THE COURT:  All right.  Mr. Dunn, Mr. Marderosian

6  was not listening to you.

7           MR. MARDEROSIAN:  I was not listening, and I would

8  like to hear it again so that there is a good record of

9  this.

10          THE COURT:  I think the record is --

11          MR. DUNN:  Your Honor --

12          THE COURT:  Go ahead.

13          MR. DUNN:  Yes, I believe I've made the record,

14 but I'd be more than happy to do so again.  The question

15 would be as follows, question, "Have you ever instructed a

16 federal officer to conceal any wrongdoing on your part?"

17 One other question could be "Have you ever given any officer

18 any direct order to fail to report anything that you have

19 done that you believed may have been inconsistent with the

20 policies and procedures of the Kern County Sheriff's

21 Department," or -- I apologize -- Kern Police Department --

22 or "Have you ever instructed any other police officer to

23 make any kind of a false report either by omission or --

24 concerning anything that you may have done?"  It would be

25 some variation of one of -- one of those three proffers in a

15

1  single question.

2          MR. MARDEROSIAN:  I'd like to respond to that.  So

3  if -- your Honor, if Mr. Stringer denies that, denies every

4  one of those, then what you're proposing is is this --

5          THE COURT:  You're pointing at me, meaning the

6  Court.

7          MR. MARDEROSIAN:  The Court, that this -- this

8  unidentified rebuttal witness who wasn't on the pretrial

9  witness list can be brought in as a rebuttal witness?

10         THE COURT:  Essentially, yes.

11         MR. MARDEROSIAN:  And then what -- what questions

12  would be asked of her in light of the proffered questions

13  that Mr. Dunn raised?

14         THE COURT:  Mr. Dunn did --

15         MR. DUNN:  Well, I --

16         THE COURT:  Mr. Dunn did better.  I'll allow Mr.

17  Dunn to do it again.

18         MR. MARDEROSIAN:  Yes.  I'd like to hear it again.

19  Thank you.

20         MR. DUNN:  If the witness is present, "Has Officer

21  Stringer ever asked you to conceal any aspect of any

22  wrongdoing that he may have (indiscernible 2:20:00)?"  And

23  if he answers no, it's over.  If he answers yes, "What

24  specifically did he ask you to conceal?"

25         MR. MARDEROSIAN:  That question right there then

1 leads to the whole issue over the morgue and the tickle

2 issue and the background so that the jury understands what

3 the context is of this testimony, is that what the Court is

4 allowing, your Honor?

5        THE COURT:  What do you suspect that the person is

6 going to proffer, because the --

7        MR. DUNN:  Well, I think --

8        THE COURT:  -- because I'm not allowing that in.

9        MR. DUNN:  Well, I think that because the record

10 is somewhat unclear, what I would suggest, because I'm not

11 sure what Officer Stringer is going to testify to, perhaps

12 we could --

13        MR. MARDEROSIAN:  He's going to deny that, your

14 Honor.

15        THE COURT:  Just -- just assume no.  I mean, I

16 think that's a fair bet to assume no.

17        MR. DUNN:  Perhaps we could have a very brief --

18 again, I know how -- how sensitive the Court is to time, but

19 I don't believe the entire 403 inquiry that we would have

20 would take more than five minutes outside the presence of

21 the jury to bring the -- the witness in, ask her the

22 question that I intend to ask, outside the presence of the

23 jury, and hear the answer that she intends to give, and that

24 could probably short-circuit the potential prejudicial value

25 of this so that everything is -- is set forth clearly, so

1  that we don't get into a situation where she's saying

2  something that nobody expects her to say.

3          MR. MARDEROSIAN:  This is a complete surprise

4  because the witness wasn't identified, your Honor, was not

5  identified.  There's been no deposition testimony.  Nobody

6  knows what --

7          MR. DUNN:  What --

8          MR. MARDEROSIAN:  Excuse me.  Nobody knows what

9  the response is going to be, and the Court is allowing this

10  as some form of impeachment of the credibility of Officer

11  Stringer.

12          THE COURT:  Mr. Marderosian, it's not some form.

13  It's -- it is impeachment.  Whether I got it wrong or right,

14  you disagree with it, but there's no -- there's no question

15  that you disagree with it.

16          MR. MARDEROSIAN:  I do because -- because in the

17  same sense, in regard to the decedent, I guess now what

18  you're telling me is when I ask Ms. Crawford "Was your son a

19  good boy" and she says yes, then I can line up unlisted

20  witnesses that will testify of all of the problems and the

21  harm that Mr. Dozer caused a lot of people?

22          THE COURT:  See, that's a character thing, and now

23  you're talking about -- you're talking about a character.

24  See, in other words, did Mr. -- did Officer Stringer do

25  these things in the morgue, that's not relevant.  That's a

1  character.  He's -- Mr. Dunn has said he's not asking.  He's

2  talking about truthfulness and untruthfulness.  You want to

3  miss that part.  You want to skip over that to try to -- to

4  try to suggest "Don't open up the slippery slope, Judge,

5  because this is what it is," but you're mixing apples and

6  oranges.  You're mixing impeachment with a witness

7  testifying here in court, which is a little different than

8  the decedent in this case since the decedent is dead.  So

9  it's a little different.

10        MR. MARDEROSIAN:  Your Honor, in all due respect

11  to the Court --

12        THE COURT:  You said due respect.

13        MR. MARDEROSIAN:  -- I'm really not missing it,

14  your Honor, because in my years of trial experience, I'm

15  just -- I'm just a little flabbergasted, to be perfectly

16  honest with you, with how the Court perceives the quality of

17  that evidence to be used as some form of impeachment of

18  Officer Stringer in this case.

19        In my experience, I have never seen that quality

20  or that type of impeachment evidence.  The courts -- your

21  Honor --

22        THE COURT:  I get --

23        MR. MARDEROSIAN:  -- and I don't mean to be

24  disrespectful, but it's always been the issue of felony

25  convictions and something of merit as opposed to this

1   officer told me not to report this or this officer wanted me

2   to lie, and I believe that's what he was saying.

3           So now we're going to enter the field of the

4   unknown here.  I don't know if this trainee, if it was an

5   opinion.  There's been no testimony on it.  I don't know

6   what she believes she heard or what she interpreted or what

7   the situation is, but we're now going to allow that, and

8   there's no reference to any of this in the pretrial.

9           THE COURT:  What standard --

10          MS. COHEN:  Your Honor --

11          THE COURT:  Ms. -- just a minute, Ms. Cohen.  Just

12  a minute.  What standard is there that I need to apply that

13  based upon all your trial experience and all your years that

14  that means that I don't allow this in?

15          MR. MARDEROSIAN:  Can I --

16          THE COURT:  What standard is that?  Why was that

17  necessary to say all of the years -- I'm not here talking

18  about all of our years of trial experience similarly.  I'm

19  applying the Rules of Evidence.  If you disagree with the

20  Rules of Evidence, then you've given me a case that

21  subscribes to this level of integrity behind the evidence.

22  You may do so, but right now I think I've heard enough on

23  the issue.  I'm going -- my ruling stands.

24          MR. MARDEROSIAN:  Can I --

25          THE COURT:  If you wish to have additional

20

1 evidence that -- where you contest the veracity or the level

2 of it under 608, because it's not about convictions.

3 Convictions is 609.  608 has a different provision.  With

4 all due respect to you, that is where you need to look.  It

5 is not character evidence.  The Court is familiar with the

6 distinguishing between evidence.

7          So I want to move on the issue --

8          MR. MARDEROSIAN:  Let me just say this if I may,

9 your Honor.  I -- what you're hearing from me and the

10 reference to my experience is just you asked me and you

11 suggested that I'm not understanding it.  I am understanding

12 it, and I'm just expressing to you that it is territory that

13 I have never seen before, and what I would ask this Court is

14 that I have until Monday or Tuesday of next week to research

15 this issue, your Honor, and to submit further authorities on

16 this issue because I do not agree with it, and I believe on

17 two fronts, on the quality of the evidence, first of all, is

18 a big red flag for me, and -- and then in terms of the

19 legality of offering this type of evidence and the quality

20 of that evidence for the purpose that the Court is

21 suggesting, I would like to research that and submit further

22 authority.

23          THE COURT:  All right.  But I want to give Mr.

24 Dunn an opportunity to respond.  But what do you need,

25 Monday?

21

1        MR. MARDEROSIAN:  Monday would be fine, your

2  Honor.

3        THE COURT:  All right.  Mr. Dunn --

4        MR. DUNN:  I wouldn't need more than 48 hours to

5  prepare a response, your Honor.

6        THE CLERK:  Monday's a holiday.

7        THE COURT:  Yes, I know.  I'm -- we're still good.

8        All right.  So then that would be Wednesday,

9  right?

10        MR. DUNN:  Acceptable, your Honor, if I may have

11  until 5:00 p.m. on Wednesday.

12        THE COURT:  All right.  5:00 p.m. on Monday then

13  for the Defense and Plaintiff 5:00 p.m. on Wednesday.  So

14  Monday would be October 10th, and Wednesday would be October

15  12th.

16        MR. DUNN:  Thank you, your Honor.

17        THE COURT:  All right.  Let's move on to the next

18  issue, and that is to exclude evidence of Defendant

19  Stringer's termination.  The Court's tentative ruling is to

20  grant that request.  It is improper character evidence.

21        Anybody wish to be heard on that?

22        MR. DUNN:  Submitted, your Honor --

23        THE COURT:  All right.

24        MR. DUNN:  -- for the Plaintiff.

25        THE COURT:  All right.  Item number three, exclude

22

1  any references that the City of Bakersfield is defending or

2  indemnifying Defendant Stringer.  That request is granted.

3  Anybody wish to be heard on that?

4          MR. DUNN:  Yes, your Honor, very briefly.  The

5  only concern that I have in that regard is if -- if the door

6  is opened, to the extent that there is an insinuation that

7  -- that Mr. Stringer would have to pay this personally,

8  unfortunately, I've seen that happen on two occasions in my

9  career where there has been an insinuation that the officer

10 -- detention could be affected or that the officer may lose

11 his home or that on some level that the jury should engender

12 sympathy for the officer because the officer will have to

13 pay this himself and that it could affect his future.  s

14         All of those things are somewhat improper

15 arguments because in reality the Government will always pick

16 up the tab unless there is a very narrow finding of punitive

17 damages which typically are -- are compromised for a very

18 low amount.

19         So I would -- I'm completely prepared to submit on

20 the Court's ruling but with the understanding that if

21 through argument, questioning, or otherwise, if this door is

22 opened for an insinuation that Officer Stringer is going to

23 have to pay this personally, we revisit the issue.

24         MR. MARDEROSIAN:  I've never opened that door,

25 would never open the door, your Honor.

23

1          THE COURT:  All right.

2          MR. DUNN:  I didn't -- I didn't want to imply that

3 you would, Mr. Marderosian.

4          THE COURT:  Mr. Marderosian is still hot about my

5 608 issue.  So we'll let him -- to the extent that --

6          MR. MARDEROSIAN:  Your Honor, I'm an advocate.

7          THE COURT:  I know you're an advocate.

8          MR. MARDEROSIAN:  I don't mean any disrespect to

9 the --

10          THE COURT:  The Court is a neutral arbiter.

11          MR. MARDEROSIAN:  Yes.

12          THE COURT:  So --

13          MR. MARDEROSIAN:  I don't mean any disrespect to

14 the Court.  I am an advocate, and when I feel that something

15 is incorrect, I have a duty to speak out about it, and it

16 has no reflection on the Court's ability at all.  It's just

17 the way that I feel about it as an advocate for my client.

18          THE COURT:  So -- which is fine, but we have no

19 jury here.  And so what I'm telling you is if you're an

20 advocate, what I want and I'm giving you that opportunity is

21 to provide authority, and that's what I look to, and the

22 Court will consider issues.

23          As to this particular issue of excluding it, the

24 tentative is to grant it.  I don't need to say to the extent

25 that people open up the door because the rule -- open up the

24

1  door is not necessarily a Rule of Evidence, but I have seen

2  it.  I have not seen it by experienced counsel, but I have

3  seen it in closing, and it has created a problem in the

4  past.  So it doesn't sound like this is going to be an issue

5  whatsoever.  This is a pretty straightforward case in my

6  opinion in terms of the facts and circumstances.

7          All right.  I'd like to skip number four only

8  because I want to discuss that a little bit further.  Let's

9  move on to number five, exclude post-death photographs of

10 the decedent other than video of the incident, and the

11 Court's tentative is to grant that request.

12         Does anybody wish to be heard?

13         MR. DUNN:  Submitted.

14         THE COURT:  All right.  As to item number six, all

15 persons in the courtroom be referred to by their names and

16 the parties be directed not to use the terms such as

17 shooter, killer, or victim, and the Court's tentative is to

18 grant that request.

19         Does anybody wish to be heard?

20         MR. DUNN:  With regard to the specific names, I

21 just want to clarify which -- which words are off limits?

22 Is it just the words victim, killer, or shooter?

23         THE COURT:  Well, what it is, it's

24 characterization rather than individuals.  In other words,

25 victim -- it depends on how you use the word "victim," but

25

1 victim denotes some sort of innocence on the part -- I don't

2 know how it would be used, but that's -- I think that's the

3 concern that the Defendants are getting into inflammatory

4 terms categorizing somebody rather than their name, to

5 suggest --

6        MR. DUNN:  I completely understand that, and

7 that's not my intention.  I just -- I just want to be sure

8 because the scope of this motion has been somewhat unclear.

9 So if I refer to Mr. Stringer as either Stringer or Mr.

10 Stringer and if I refer to Mr. Dozer as either Dozer or Mr.

11 Dozer, am I -- am I okay?

12        THE COURT:  You're fine.  It's usually preferable

13 to have Mr. or Ms. in front of it, just -- it's a better

14 practice.

15        MR. DUNN:  Okay.  With that in mind, I submit,

16 your Honor.

17        THE COURT:  All right.  Thank you.

18        All right.  Moving on to item number seven, to

19 exclude terms such as murder, homicide, and kill.  The

20 Court's tentative ruling on that is to grant that request.

21        Does anybody wish to be heard?

22        MR. DUNN:  I believe that -- the answer is that --

23 I apologize, your Honor.  Very briefly.  Mr. Marderosian and

24 I are working on a stipulation that will obviate the

25 appearance of the coroner.  And I will typically -- should

26

1  the coroner arrive, this may issue -- this issue may come

2  back up, but I am confident that we'll be able to work out a

3  stipulation.  Therefore, I will submit.  The only thing that

4  I had an issue with was homicide, but the other two,

5  obviously, I wouldn't say murder or killed obviously, but

6  homicide is -- homicide is a term that corners use that does

7  not reflect -- it doesn't implicate guilt or innocence or a

8  criminal culpability.  However, this is not going to be an

9  issue because Mr. Marderosian and I are going to solve it

10  before trial.  So I submit.

11          THE COURT:  All right.  Because I can't see why

12  the coroner would testify as to homicide in this case.

13          MR. MARDEROSIAN:  I agree with that.

14          THE COURT:  Okay.

15          MR. DUNN:  Okay.  Just -- okay.

16          THE COURT:  Any --

17          MR. DUNN:  I submit, your Honor.

18          THE COURT:  And the fact that something goes to a

19  coroner isn't necessarily criminal in nature.  So I can't

20  see -- you know, the coroner should be able to know what a

21  homicide is, and I don't think there's any allegations

22  whatsoever that this was -- came to them as looking at it

23  for that purpose.

24          MR. MARDEROSIAN:  Just so we're clear, no one's

25  going to reference a homicide in regard to this case, is

1  that right?

2          THE COURT:  Are you asking me?

3          MR. DUNN:  I do not intend to, and I -- I am

4  willing to give my word that I will not.

5          THE COURT:  Okay.  All right.  Well, the Court's

6  going to make a ruling.  So it -- and, remember, under my

7  procedures, you are to advise your witnesses of my rulings

8  so that it's consistent.  It's not just applicable to

9  counsel, but it's applicable to the witnesses which each

10 party calls.

11         MR. DUNN:  All right.

12         THE COURT:  Let's move on to the next issue, to

13 exclude any reference of the former Bakersfield Police

14 Officer Diaz and Patrick Amara.  The Court's tentative is to

15 grant that in part.  The Plaintiff may not make references

16 to the wrongdoing of Diaz or Amara except Diaz's felony

17 conviction may come in if Diaz testifies.  That would be it.

18         MR. MARDEROSIAN:  I don't --

19         MR. DUNN:  Submitted.

20         MR. MARDEROSIAN:  I don't think he's on the

21 witness list, is he?  Ms. Cohen?

22         MR. DUNN:  He's incarcerated actually.

23         MS. COHEN:  He's on the witness list.  His entire

24 role in this case was to interview and answer a witness who

25 is not getting called, and I will represent to the Court,

28

1  your Honor, that Mr. Dunn identified the witnesses he

2  intended to call in this case, none of which were Demacio

3  Diaz or Patrick Amara, and we don't intend to call them

4  either.

5          THE COURT:  It sounds like my only condition

6  precedent is he testifies, and it doesn't sound like he's

7  going to testify.  So there will be no references then.

8          Okay.  All right.  Let's move on to item number

9  four, and that is exclusion of the pre-death pictures or

10 videos of the decedent.

11         So there is law that suggests and supports the

12 proposition that pictures are appropriate.  My concern to --

13 what -- to -- I have one solution.  Should we bifurcate --

14 should we deal with the liability phase and then deal with

15 the damage phase if -- if liability is found?  So I just put

16 that out to the parties.

17         MR. DUNN:  And from the Plaintiff, your Honor, I

18 don't believe that -- that -- from my perspective, that the

19 interests of justice would be served by that, only because

20 one of my witnesses, Leslie Laray Crawford, would have to

21 testify twice.  She has some testimony that is relevant to

22 the issue of liability because she will testify and has a

23 long history and familiarity with Mr. Dozer's psychiatric

24 condition, his mental illness, his diagnosed schizophrenia,

25 which is relevant on the issue of his compared effect during

29

1 the incident in question.  So if she could testify on that

2 one issue, she would simply have to testify twice, and I --

3 aside from that, I don't believe that the entire damages

4 phase of this case in its entirety, cover to cover, would

5 take more than 35 minutes of actual trial testimony.  So to

6 break up the -- the case in that manner, I don't believe the

7 interest of judicial economy would be furthered.  Mr.

8 Marderosian and I have talked about this.  I don't believe

9 -- if the jury is picked by the afternoon on Tuesday of next

10 week, I believe that we will be resting our case by

11 Wednesday afternoon at the latest.  So I just don't think

12 it's necessary, and that's just from the Plaintiff's

13 perspective, your Honor.

14         MR. MARDEROSIAN:  My problem is is that these

15 photographs are not consistent with what was going on at the

16 time of the incident, and it's misleading to the jury, and I

17 believe it should be bifurcated.  If the Court is inclined

18 to allow any of these photographs, especially before Ms.

19 Crawford testifies, because this man was homeless at the

20 time of this incident basically, and to allow these

21 photographs is a complete misrepresentation of what the

22 reality was, and if Mr. Dunn intends to pursue that, I think

23 it should be bifurcated.  We try the liability first, and

24 we'll go on to the issue of damages in the second phase.

25         THE COURT:  And the photos themselves, it's --

30

1  we're talking about the photos.  It really has to do with

2  damages and damages only.  It has nothing to do with

3  liability, and the problem is it bleeds over into evoking

4  some form of sympathy, and that's the problem where it's not

5  relevant, and that's why the Court is proposing to the

6  extent that certain photos -- I'm not sure the extent of the

7  full slide show is relevant, and I think Defense has an

8  opportunity then to raise issues related to that to test the

9  damages part.

10        MR. MARDEROSIAN:  I personally think the Court

11 should exclude any photos that aren't reflective of the

12 relationship between the decedent and his mother within a

13 year of the incident.  As you --

14        THE COURT:  You -- the -- the law does not support

15 that under relevance because a parent/child relationship

16 doesn't just begin right before a year or a time frame.

17 There may be relationships that occurred prior to.  Again,

18 you get to test the veracity.  The problem is it does open

19 up areas in terms of relevancy to test that relationship.

20        MR. MARDEROSIAN:  I understand that.  And on that

21 issue then with Mr. Stringer, can -- can we then call in

22 witnesses that testify to his truthful character as well,

23 since -- since --

24        THE COURT:  It depends on how you're offering it,

25 and you may be able to, yes.  Yes.  But it has to be -- it

1  has to be certain evidentiary foundations, because it is --

2  the rule, 608, is for truthfulness and untruthfulness.

3          MR. MARDEROSIAN:  All right.  We'll include that

4  in our -- in our authorities, your Honor.

5          THE COURT:  All right.  Make sure you do a proffer

6  then.

7          MR. MARDEROSIAN:  Yes.

8          THE COURT:  So that we can avoid that.

9          MR. MARDEROSIAN:  Right.

10          THE COURT:  All right.  Mr. Dunn, how wedded are

11  you to the photographs?  That's really what it comes down

12  to, and this slide show.

13          MR. DUNN:  Well, I certainly would not want to

14  spend a lot of time with it.  I -- I believe that I could --

15  I could narrow it down to six or less photographs.

16          THE COURT:  What I'd want to know is I -- I'd want

17  you to talk with Mr. Marderosian -- my intent is to

18  bifurcate the liability from the damage phase if you intend

19  to use the slide show as presently proffered.  If you reduce

20  it and show it to the Defense and they don't have a problem

21  with it or that we provide some sort of instruction to the

22  jury at the time that it's being dealt with, then we might

23  be able to address that.

24          In balancing out the judicial economy part, in

25  light of your proffer that it's only going to take 45

32

1   minutes, I don't see it as difficult in the judicial

2   economy.  I am concerned about the prejudice in the other

3   areas of liability where it is not relevant.  The pictures

4   are not --

5           MR. DUNN:  I am not at all -- and I apologize so

6   much, your Honor.  I just -- I wanted to save you the time.

7   I'm not at all wedded to the slide show.  I don't need -- I

8   don't need the slide show, and I don't intend to show the

9   slide show.  I intend to show some representative

10  photographs.  And, again, in my experience, I've usually

11  been able to do it with several, six, usually even less, but

12  in terms of actually playing a slide show, I do understand

13  the Court's concern in that regard.

14          If the Court's tentative ruling is to bifurcate

15  the case even if we're looking at six or less photographs,

16  that's a different issue than the slide show.  So I -- I

17  guess I just wanted to get some clarification on that.

18          THE COURT:  Well, let me tell you that my

19  tentative was based upon the slide show.  I don't know what

20  the -- the six photos that you're looking at, but it could

21  result in the same decision.  Right now --

22          MR. DUNN:  Okay.

23          THE COURT:  -- my ruling is to bifurcate.  If you

24  wish to withdraw your request to admit certain evidence, the

25  Court would consider it, but I want you to run it by Mr.

33

1  Marderosian, and I want you to talk.  To the extent that

2  there is an objection, I want you to talk as to whether it

3  could be given a curative instruction at the time because

4  that's the next question I'm going to be asked, because you

5  can balance out, right.  The proffer that you have right

6  now, I think it is unduly prejudicial to the Defendant in

7  the liability phase to play the slide show coupled with the

8  pictures.

9            MR. MARDEROSIAN:  Well, if you look at the --

10           MR. DUNN:  Okay.

11           MR. MARDEROSIAN:  If you look at the pictures, the

12 pictures obviously are misleading and call for sympathy,

13 your Honor.  That in and of itself should allow this Court

14 to bifurcate the liability -- damages from the liability

15 phase of the case.

16           THE COURT:  Well, I don't know which pictures --

17           MR. MARDEROSIAN:  Okay.

18           THE COURT:  -- he intends to now offer.  He said

19 six pictures.

20           MR. MARDEROSIAN:  All of the pictures are of a

21 phase of Mr. Dozer's life and relationship with his mother

22 that is completely inconsistent with what was happening at

23 the time of his death.

24           THE COURT:  Well, my tentative stands as to

25 bifurcation.  So to the extent --

34

1           MR. DUNN:  All right.  And I -- I wanted to submit
2  on the tentative as to bifurcation.  If we could -- if we
3  could instruct the jury or if the jury could be instructed
4  or told -- and hold me to it, I -- I want to be held to it,
5  that if there is a damages phase of the trial, that it would
6  take less than an hour.  If the jury could be told that, I
7  would -- I would submit to not introducing any photos during
8  the case in chief, and I would also submit to any order of
9  bifurcation if -- the only concern I have is if the jury
10 thinks that they're going to be there for another two or
11 three days talking about damages, and I -- I rarely spend a
12 lot of time on damages phases.
13           THE COURT:  All right.  This --
14           MR. DUNN:  And if they're told -- go ahead.
15           THE COURT:  This is what I would say --
16           MR. MARDEROSIAN:  That --
17           THE COURT:  This is what I would say.  You can
18 submit jury instructions when you submit your jury
19 instructions, and you can propose that proffer as to how the
20 jury should be instructed.  I think it might be appropriate
21 in this case just to tell them that this is a first phase.
22 I usually don't do that, but the last trial we had, when we
23 went into punitive damages, I could tell the jury was not
24 pleased.  They thought they were done.  So I will tell you
25 that.  That was just from an expression, but I'll leave it

1  to the parties to proffer jury instructions, and I'll hear

2  it out and see whether that is something -- we're going to

3  have to decide that at the beginning, and it would have to

4  go something to the effect that there are possibly two

5  phases.  We cannot suggest there would be two phases to --

6  to lead them one way or the other, but -- and do it --

7          MR. DUNN:  Are they going to be -- I apologize

8  once again, your Honor.

9          MR. MARDEROSIAN:  Mr. Dunn is talking about

10 wanting to advise the jury that they won't be here that

11 long, which in my view is completely improper because no one

12 knows how long that second phase is going to take.  When he

13 says an hour, that may be his case, but it doesn't take into

14 effect my case, your Honor.  So giving any representation as

15 to time to try to suggest that they won't be here that long

16 would be completely unfair.

17         THE COURT:  Well, that's why I said let's let

18 everybody propose their instructions again, and then I'll

19 determine that.

20         MR. DUNN:  Will there be any representations made

21 to the jury about how long this trial will last during the

22 voir dire by the Court?

23         THE COURT:  Yes.  I'm going to tell them it's --

24 the parties believe that this case will be done by the end

25 of the week, and there -- there is a possibility it could go

36

1  into the next week, but the parties have assured me that it

2  will be done by the end of the week.

3          Can I say that?

4          MR. MARDEROSIAN:  Yes, I think that would be

5  accurate.  And, again, it depends on what character

6  witnesses we may ask the Court to be able to call, your

7  Honor.

8          MR. DUNN:  Very well.  And if we did go into next

9  week hypothetically, would it be -- would the Court be dark

10 on Monday?

11         THE COURT:  We should be done on -- we'd be done

12 on Monday because the Court is unavailable after Tuesday.

13         MR. DUNN:  Okay.  So we'd actually have a fully

14 day of testimony on Monday?

15         THE COURT:  I'll make it happen.

16         MR. DUNN:  Okay.  Thank you, your Honor.  That's

17 all I need.

18         THE COURT:  I'm hoping that -- when I say that

19 we're done by the end of the week, that includes

20 deliberation.

21         MR. DUNN:  I would agree, your Honor.

22         THE COURT:  Do you agree, Mr. Marderosian?

23         MR. MARDEROSIAN:  Yeah.

24         THE COURT:  Okay.  That's how I gauge it.  Trial

25 will be done by the end of the week because when we voir

1 dire jurors, we want to make sure that if there's any issues

2 that, you know, they have something for the following week,

3 but it should be done.

4          Okay.  All right.  So that is the Court's ruling.

5 I received a motion in limine that -- was it filed this

6 morning?

7          MR. MARDEROSIAN:  Yes, your Honor.

8          THE COURT:  All right.

9          MR. MARDEROSIAN:  Number nine.

10          THE COURT:  All right.  The Court has not had an

11 opportunity to review this.  Mr. Dunn, have you seen this?

12          MR. DUNN:  I glanced over it.  I definitely oppose

13 the motion.  I didn't -- I didn't have time to write up an

14 opposition before today obviously at 2:00.  So I'm going to

15 leave it up to the Court as to how we're going to handle

16 this.

17          THE COURT:  Well, you would like to file -- I have

18 to give you notice and opportunity to be heard or there is

19 an argument that it should be denied as untimely.

20          So, Mr. Marderosian, why now?  Why was this raised

21 now?

22          MR. MARDEROSIAN:  Well --

23          THE COURT:  As opposed to when the regular

24 schedule was set?

25          MR. MARDEROSIAN:  Because recently what -- Mr.

38

1  Dunn and I have been discussing the issue of settlement.  I

2  won't say any amounts.  And then -- which led me to go to my

3  client, and then Mr. Dunn, in my view, left me hanging and

4  withdrew the --

5         MR. DUNN:  I'm going to object to --

6         MR. MARDEROSIAN:  Let me --

7         MR. DUNN:  -- this mischaracterization.

8         MR. MARDEROSIAN:  Let me explain this.  The Court

9  has asked me, and I'm going to explain it.

10        THE COURT:  It's -- it's all right.  I cut through

11 that stuff, Mr. Dunn.

12        MR. MARDEROSIAN:  And so I have been scratching my

13 head wondering why when he emails me a certain amount and I

14 go --

15        MR. DUNN:  Your Honor, this is --

16        MR. MARDEROSIAN:  Hold on, Brian.  I'm not going

17 to say any amount.  The Court has asked me, and I'm going to

18 explain.  Again, there's no jury here.

19        And so what I determined was in the interim there

20 is a case in El Cajon of an alleged mentally ill man that

21 was shot and killed that has been in the newspapers in

22 Southern California daily, and it is a big issue, and I

23 suspect that that's what's driving this issue here.

24        So when I started to look at the issue of this

25 claim of mental illness and talking with Mr. Dunn, that's

39

1   what I started to hear more and more in terms of his case.

2   So I started to examine the quality of the evidence that we

3   have here.  He's designated no experts on that subject.  I

4   don't know what -- what evidence there is about that, but he

5   certainly hasn't referenced it in the pretrial or identified

6   any experts on this subject, and I don't want Mr. Dunn to

7   just get up there and without any support tell the jury that

8   Mr. Dozer was mentally ill and that we're dealing with a

9   situation similar to El Cajon where police officers are

10  shooting a mentally ill man and there's issues of sympathy,

11  and all of that goes along with that.

12          So that's why I filed this motion, because I

13  figured that's where that was going.

14          THE COURT:  All right.  All right.  Mr. Dunn, how

15  much time do you need to respond to this?

16          MR. DUNN:  Can I just turn both my briefs in next

17  Wednesday?

18          THE COURT:  That's fine.

19          MR. Marderosian?

20          MR. MARDEROSIAN:  Yeah, that -- that's fine,

21  and --

22          THE COURT:  Do you want to reply?

23          MR. MARDEROSIAN:  Yes, we can -- we can reply.  As

24  soon as we get his papers, if you give us say --

25          THE COURT:  Just a day?

40

1          MR. MARDEROSIAN:  Just a day, your Honor.  That's

2  all we would need.

3          THE COURT:  All right.  One day.  All right.

4          MR. MARDEROSIAN:  Your Honor, there is one other

5  motion that I have, and it's an oral motion that I want to

6  -- want to put before the Court here.

7          THE COURT:  All right.  So I will take that matter

8  under submission.  I see no need to have a further hearing

9  on that.  So the Court will issue an order on that one when

10 it issues the order.  I intend to issue the motion in limine

11 order, reserve the one issue on the impeachment that --

12 pending further briefing.  So I will issue these orders as

13 my final orders and then keep these two outstanding.

14          All right.  The oral motion, Mr. Marderosian?

15          MR. MARDEROSIAN:  Yes, this is an oral motion.

16 And before coming here today, I was reviewing some

17 depositions, and we've known all along that at the scene

18 after Mr. Dozer was shot, as consistent with the policy, he

19 was handcuffed, and I believe that that evidence is

20 irrelevant because that's after the -- the shooting event,

21 and -- and it raises issues of sympathy and just --

22          THE COURT:  Okay.  I got it.

23          MR. MARDEROSIAN:  -- is he --

24          THE COURT:  Mr. Dunn, do you see any relevance in

25 after the --

41

1          MR. DUNN:  I --

2          THE COURT:  Go ahead.

3          MR. DUNN:  I would not -- and I hadn't even

4 thought about it.  No, I don't plan to show any pictures

5 that talk about him being handcuffed.

6          MR. MARDEROSIAN:  Okay.  Thank you.

7          THE COURT:  All right.  Do you want an order to

8 that effect, Mr. Marderosian?

9          MR. MARDEROSIAN:  No.  I accept Mr. Dunn at his --

10 and I know Mr. Dunn.

11          THE COURT:  Okay.  Fine.  All right.  So anything

12 further then?

13          MR. MARDEROSIAN:  No, your Honor.

14          MR. DUNN:  Not from the Plaintiff, your Honor.

15          THE COURT:  All right.  We're set for trial on

16 October --

17          MR. MARDEROSIAN:  18th.

18          THE COURT:  -- 18th at 8:30.  The Court will issue

19 its rulings as to the motion in limine prior to that time,

20 and so we will see you then all on -- oh, how much time -- I

21 hesitate to ask this question, but usually I give 20 minutes

22 for voir dire per counsel.  Is there -- is that acceptable

23 or do you want to make a request now or what's your thought?

24 Mr. Dunn?

25          MR. DUNN:  It's acceptable to me, your Honor.

42

1          MR. MARDEROSIAN:  It's acceptable to the Defense

2  as well.

3          THE COURT:  All right.  So I keep you on a clock.

4  All right.

5          MR. MARDEROSIAN:  All right.

6          THE COURT:  All right.  Anything further then?

7          MR. MARDEROSIAN:  No, your Honor.

8          MR. DUNN:  Nothing from the Plaintiff, your Honor.

9  Thank you.

10          THE COURT:  All right.  Thank you.  We're in

11  recess.

12          MR. MARDEROSIAN:  Thank you, your Honor.

13          THE COURT:  Thank you.

14      (Proceedings concluded.)

15

16          I certify that the foregoing is a correct

17  transcript from the electronic sound recording of the

18  proceedings in the above-entitled matter.

19

20  /s/Crystal Thomas_____   12/6/2017_____
   Transcriber, AAERT CERT *654   Date

21

   FEDERALLY CERTIFIED TRANSCRIPT AUTHENTICATED BY:

22

23
   /s/L.L. Francisco_____
24  L.L. Francisco, President
   Echo Reporting, Inc.

25

*Echo Reporting, Inc.*